PHILIPS v. BAILEY et al., Appellants.

| 82 | 639 |
| 134 | 465 |
| 82 | 639 |
| 136 | 273 |
| 137 | 119 |
| 82 | 639 |
| 140 | 115 |
| 82 | 639 |
| 143 | 398 |
| 82 | 639 |
| 83a | 434 |

1. **Deed of Trust**: SALE: TENDER. A tender before sale of the interest due without the principal, is sufficient to prevent a sale by a trustee under a deed of trust, although the latter provides that, in case of failure to pay the interest as it becomes due, the entire debt, principal and interest, shall mature, and the property be sold to pay the same.

2. ———: TAXES: DEFAULT: SALE. Where a deed of trust provides that the debtor shall pay the taxes on the property conveyed, and in case of default in that regard, the debt, principal and interest, shall mature and the property be sold to pay the same, the trustee, on the payment before sale of the taxes, should not sell.

3. **Insurance**. CESTUI QUE TRUST: DEFAULT. Where a deed of trust provided, that the debtor should keep the property insured, but the creditor retained, for that purpose, out of the loan a sum sufficient to pay the insurance during the period of the loan, and the debtor did not learn of the failure of the creditor to effect the insurance until after the property was burned; *Held*, that the debtor was not in default as to such insurance.

4. **Deed of Trust, Stipulations of**: ATTORNEY'S FEE. An attorney's fee stipulated in a deed of trust to be paid out of the proceeds of the sale of the property to pay the debt, cannot be demanded before sale.

*Appeal from Jackson Circuit Court.*—HON. S. H. WOODSON, Judge.

AFFIRMED.

*Comingo & Slover* for appellants.

(1) The evidence excluded by the court was both relevant and competent. It tended to rebut any inference of fraud as alleged that could possibly be made from other facts given in evidence. (2) A court of equity will not relieve against the stipulations or covenants contained in a contract except on the ground of fraud or mistake in consequence of which such stipulations or covenants are entered into. *Sloat v. Bean*, 47 Ia. 60; *Malcolm v. Allen*, 49 N. Y. 448; *Bennet v. Stevenson*, 53 N. Y. 508; *Heath v. Hall*, 60 Ill.

344; *Brownlee v. Arnold*, 60 Mo. 79 ; *Wapples v. Jones*, 62
Mo. 440 ; *Noell v. Gaines*, 68 Mo. 651. (3) The covenant
to pay the taxes, and the stipulation that in default of so
doing the whole debt should become due, is valid. *Stan-
clift v. Norton*, 11 Kas. 218, 222. And so is a covenant to
insure. 1 Jones on Mort., § 78. Stipulations for the pay-
ment of a reasonable fee of an attorney or solicitor, is valid
and binding. *Rice v. Cribb*, 12 Wis. 179, 185 ; *Hitchcock v.
Mossick*, 15 Wis. 522 ; *Pierce v. Kneeland*, 16 Wis. 672, 678 ;
*Robinson v. Loomis*, 51 Pa. St. 78 ; *Weatherby v. Smith*, 30
Ia. 131 ; *Clawson v. Munson*, 55 Ill. 394.

*Gates & Wallace* for respondent.

There was no default on respondent's part at the time
of the sale. The payment of the January interest to W. H.
Bunn was a valid payment. *Brooks v. Jameson*, 55 Mo. 505.
Where there is a default in the payment of interest, and by
the terms of the deed of trust the principal then becomes
due, it becomes due only for the purposes of the sale, and
when the interest is paid or tendered, then the principal is
no longer due. *Morgan v. Martin*, 32 Mo. 438 ; *Mason v.
Barnard*, 36 Mo. 384 ; *Whalen v. Reiley*, 61 Mo. 565. The
respondent was not in default either as to attorney's fees or
the taxes. *Thornton v. Bank*, 71 Mo. 232 ; *Eitelgeorge v.
Association*, 69 Mo. 52. Property worth not less than $1,600,
was sold *en masse* for only $560.50. This alone would be
sufficient to set aside the sale. *Vail v. Jacobs*, 62 Mo. 130;
*Stoffle v. Schroeder*, 62 Mo. 147.

RAY, J.—Respondent filed this bill in equity in the
circuit court of Jackson county, Missouri, to set aside a
certain sale and deed executed thereunder by appellant,
Bailey, to his co-appellant, the First National Bank of Pleas-
ant Hill, Missouri.

He alleges therein, in substance that he is the owner
of the southeast quarter of the northeast quarter and the
northeast quarter of the southeast quarter of section 33,

township 47, range 30, Jackson county; that on July 2, 1877, he and his wife executed a deed of trust, conveying said land to one Powell, as trustee, to secure the payment of a bond in the trust deed described and the interest coupons thereto attached; that said bond was for $600 payable five years after date, bore interest at the rate of nine per cent, payable semi-annually; * * that said Bailey is the sheriff of Jackson county and was authorized by said trust deed to act as trustee in case of the absence from the State of Powell the trustee therein; that the National Bank of Pleasant Hill, his co-defendant, is a corporation organized under the laws of the United States; that he negotiated the loan evidenced by said bond with one Bunn, of War- rensburg, Missouri; that he received from him, the money so borrowed; that he delivered the deed of trust and said bond to him; that he paid the interest coupons, as they became due, to him, and that at the time of the sale, under the deed of trust, of which he complains, he had paid all interest then due on said bond, and all taxes due on the bond described in the deed of trust; that the First National Bank of Pleasant Hill, one of the defendants, and one Theo- dore Stanley, conspiring to cheat and defraud him out of his said property, claimed to have purchased said bond and coupons; and without his knowledge, and while he was temporarily absent from this State, caused his said property to be advertised for sale, by defendant Bailey, as trustee, under said deed of trust; that the day of sale was fixed for the 25th of January, 1880; that in order to avoid litigation, he, plaintiff, before said sale, tendered to said Bailey all the costs of advertising said sale, and all trustee's legal charges, and all interest then due on the coupons attached to said bond, that the said bank and said Stanley claimed to be due, although he had paid the same to said Bunn; that defendant Bailey, under the direction of said Stanley and said bank, refused to receive the amount thus tendered, and demanded that said bond and all interest then due, and the costs of advertising, and the trustee's charges and

41—82

attorney's fee of $50 be then paid, and that upon plaintiff's refusing to comply with the demand, said Bailey proceeded to sell under said deed of trust, and that said bank was the only bidder, and became the purchaser at said sale; and that plaintiff, at the time of and before the sale, gave notice of the facts above stated, and forbade the sale. Plaintiff insists that the interest on said bond is usurious; asks that there be an accounting between plaintiff and defendants, and that the sale be set aside.

Defendants filed answer to this petition, admitting the execution of the trust deed by respondent; also, the date and maturity of the bond and the rates of interest as given; also, that there are stipulations in the trust deed in substance as stated in the petition. That Bailey was sheriff as stated; that the First National Bank is a corporation; that Bailey, by direction of said bank, sold said land under said trust deed and that said bank became the purchaser thereof. The answer then denies all other allegations in the petition. As a further defense it sets up that it was stipulated in said deed of trust in case of default in the payment of the bonds or coupons at the time, in the manner, and at the place specified, or in case of non-payment of taxes or neglect to procure or renew insurance on the property it should be lawful for the trustee or his successor on the application of the legal holder of said bond or coupons,    *    *    to sell the property    *    *    and to execute a deed of conveyance therefor and to apply the proceeds of sale first, to the payment of the expenses of advertising, selling and conveying said property, including also the sum of $50 for an attorney's fee and second the amount then due on said bond and coupons and third, the residue to be paid to respondent; that in default of any of the payments of principal or interest, or of a breach of any of the covenants or agreements contained in said deed of trust, the whole of the sum thereby secured, with interest to the time of sale, should become due and payable; and the premises in said trust deed described, might at once be sold in the same

manner and with the same effect as if said bond, by its terms had matured.

That on January 12th, 1880, said Bunn, for value re-ceived, indorsed and delivered said bond to defendant, the First National Bank, and said defendant thereby became the legal owner and holder thereof, and of the coupons at-tached thereto; that plaintiff failed to keep and perform the stipulations and covenants in said deed of trust con-tained, in that he failed and neglected to pay the interest coupon which became due on the 2d day of January, 1880. And failed and neglected to pay the taxes for the years 1878 and 1879, or either of said years, at the time they be-came due or any time thereafter, as required by the cove-nants in his said deed of trust; and failed to insure, or cause to be insured, said property as required; that by reason of the breaches of said covenants and agreements said bond, and all interest then due, became due and payable, and it became and was lawful for defendant, said National Bank, as the owner and holder of said bond and coupons, to cause said property to be sold; that said Bailey, pursuant to the terms and provisions of said deed of trust, did, on the 25th day of February, 1880, at the court house door in the city of Independence, sell at public vendue, to the highest and best bidder for cash, the said real estate, and that at said sate and bank became the purchaser, at and for the price and sum of $560.50, and received a deed therefor; that the expenses attending the sale and transfer of said real estate as aforesaid, amounted to $97.50, leaving a balance of $462.50, which was applied as a credit on said bond, as required by the terms of said deed of trust.

In reply to this answer, plaintiff states that at the time he made the loan mentioned in the petition, Wm. H. Bunn, from whom he effected said loan, retained from the amount borrowed by plaintiff, sufficient money to pay the insurance on the buildings erected on the premises, and agreed to have the same insured; that sometime in the fall of 1879

said building was destroyed by fire; that plaintiff believed that said Bunn, through whom he effected said loan, had insured the building, and so believed until after it was destroyed; that on inquiring of said Bunn, he learned that he had failed and neglected to have it insured, and that said Bunn afterwards refunded to plaintiff the money he had obtained for the purpose of effecting said insurance. All the other allegations of the answer are denied.

To this reply there was no demurrer or motion to strike out.

There is little, if any, conflict about the material facts, which are in brief as follows: In 1877 respondent was the owner of two forty acre tracts of land in Jackson county, situated about five miles from Pleasant Hill, Missouri; fifty acres of it were in cultivation and the balance was timber land, and was worth $20 per acre, or $1,600 in all. In December, 1877, he, through one Wm. H. Bunn, of Warrensburg, Missouri, borrowed $600, and to secure the payment of same executed deed of trust on the above described premises. The deed of trust was dated back to July 2nd, 1877, and interest charged and collected from that date, Phillips actually receiving only $507 of the $600, the $93 being retained for expenses, interest, commissions and for sufficient to insure the dwelling house on the premises for five years. The interest on the $600 became due and payable semi-annually, viz: 2nd of July and January of each year; the principal became due and payable on the 2nd day of July, 1882. All the transactions were had with Wm. H. Bunn, at Warrensburg, who was acting as the agent for his brother, T. J. Bunn, to whom the bond was made payable. His brother was making a good many loans of this kind in that section at that time, and he, Wm. H. Bunn, did all the business and collected and forwarded the interest on them as they became due.

The taxes on the property in the deed of trust described, were not paid for the years 1878 and 1879 at the time they became due and payable. For each of said years.

they were paid by respondent on the 10th of February, 1880, about fifteen days before the sale. The property had not been insured, but respondent had permitted Wm. H. Bunn to retain out of the amount borrowed a sum sufficient to insure the property and for that purpose, but said Bunn neglected to effect an insurance, and the property was destroyed by fire in October, 1879, and some time after the amount retained for insuring the property was by said Wm. H. Bunn returned to respondent's attorney. The respondent did not know it was not insured until after the house was burned. Respondent paid promptly all the interest coupons that fell due before the 2nd of January, 1880. At that date he was under arrest and confined in jail at Kansas City, Missouri, on a charge on which he was afterward tried and acquitted. When released he paid to said Bunn the interest due January 2nd, 1880. This Bunn received and receipted for February 2nd, 1880. Eight days afterward, viz: February 10th, 1880, he learned his land was advertised for sale under the deed of trust, and on that day, when he went to see the sheriff, who was acting as trustee, to see if the sale had been countermanded, he learned for the first time that appellant, the National Bank, was the owner of the bond.

The president of the bank testified "that he bought the bond about the middle of January, 1880; that he made inquiry for it and bought it; that he received it about the date of its transfer to the bank, a few days thereafter; that he did not notify plaintiff he had bought it; that he did not make a demand on plaintiff for the January interest before he advertised the land for sale, and that he never asked plaintiff for any interest on said bond; that he sent it to the bank's attorney at Independence, soon after he received it; that he did not buy it with the intention to foreclose it as soon as he bought; that it is the only bond of the kind the bank ever bought." On the day of sale, and before sale, the respondent, by his attorney, E. P. Gates, tendered to the sheriff the interest due January 2nd, 1880,

the costs and expenses of the advertisement and the sher-
iff's commission, all that was claimed to be due except the
principal of the bond, $600, and an attorney's fee of $50.
The sheriff, under the directions of the president of the
bank, refused the tender unless the latter were also paid,
and then proceeded to sell the property, and the bank
bought the same at the price of $560.50, and received a
deed therefor.

Upon the trial defendant offered its president as a wit-
ness to show that plaintiff's father was indebted to the
First National Bank of Pleasant Hill; that he (plaintiff's
father) had promised to pay the debt out of the land in
controversy in this cause, and had afterwards fraudulently
conveyed the property to plaintiff and plaintiff's brother;
that he, witness, and other officers of said bank believed
that said conveyance to plaintiff and his brother was fraud-
ulent and void as to creditors and proposed to take steps to
expose the fraud and subject the land to the payment of
the debt contracted by plaintiff's father with the said bank.
Which testimony the court excluded as irrelevant and in-
competent. To the exclusion of which defendants at the
time excepted. The court found the issues for the respond-
ent and entered up a decree accordingly, and appellants, after
unsuccessful motions to set aside the finding and for new
trial, bring the cause here by appeal.

It will be seen, therefore, that the bank purchased the
bond and coupons about the middle of January, 1880, ad-
vertised the property for sale January 24th and forced the
same to sale February 25th. The sale was had under a
deed of trust to secure a bond whose principal was not due
until July, 1882. The tender made by respondent on the
day of sale which included all interest due, costs of adver-
tising, commissions, etc., was refused, because it did not,
also, include the principal of the bond and the attorney's
fee of $50. This tender should have been accepted by the
sheriff who was acting in place of the trustee, and the sale
stopped. The respondent had paid the interest promptly

until the installment of January 2d, 1880, fell due. He was then under arrest and in jail at Kansas City on a charge of which he was acquitted on the trial. After his release and without notice of any change in the ownership of said bonds and coupons attached he paid this January interest to Wm. J. Bunn to whom all the payments of interest had been regularly made and with whom the loan was negotiated and who was the brother of Thos. J. Bunn to whom the bond was made payable. Wm. Bunn receipted therefor in his brother's name and sent it to his brother February 2nd, who received it and this was the last known of it. What effect or consideration should be given to this payment, as the bank had purchased the bond prior thereto and on January 12, 1880, is not necessary to be now determined, for this interest was included in the tender made by respondent on the day of sale. If we are to be controlled by the exact letter in the covenants of the trust deed the evidence may be held to show a technical default on the part of respondent as to the payment of the taxes and the January interest, for they were not paid when due as thereby required.

The taxes, however, were all paid February 10th, 1880, and the January interest tendered as already said. It was provided in the trust deed that in the event of a breach of its covenants the whole of the principal and interest to the time of sale should at once become due and the property sold in like manner and effect as if the bond by its terms had matured. In the case of *Whelan v. Reiley*, 61 Mo. 565, the trust deed therein involved contained covenants similarly harsh and stringent to those before us. The difference attempted to be shown by appellant's counsel between the two instruments, is we think, rather subtle and is not material and substantial. In that deed it was provided that, in case of default in the payment of any of the interest notes, etc., then the whole debt secured should become due and payable, etc. There was in that case a default in the payment of a portion of the interest notes when due

and a tender to the trustee before sale of an amount sufficient to pay costs and the matured interest notes and a refusal thereof by the trustee, unless the principal note was, also, paid. It was there said that the default in the payment of the interest notes was cured by the tender made and that, therefore, the payment of the principal should not have been demanded. With this view and result we are well satisfied. The reasoning and principles announced in that case, cover and control the important questions in the one now before us.

Nor do we think the respondent was bound to tender the sum of $50 as an attorney's fee. It had not, under the provision of the trust deed itself, become due. It was to be paid out of the proceeds of the sale as a part of the expenses of such sale. It did not even become due by virtue of any default in any of said payments, or a breach of any of said covenants nor upon the mere advertisement of the property, but was a sum to be collected as a part of the expenses only when there was in fact a sale and conveyance of the property.

Nor do we think there was, under the pleadings and evidence, any such breach of the covenant in the trust deed to procure and renew the insurance as should in equity declare the whole sum thereby due and justify a sale of the property. As we have already seen when the loan was made, Wm. J. Bunn acting for his brother, Thos. J. Bunn, reserved and retained from the money borrowed a sum sufficient to pay the insurance for five years, the whole period of the loan, which he agreed so to apply, but which he neglected to do, as he himself testifies, and respondent did not know that the building was not insured until after it was destroyed by fire in October, 1879 ; of this there is no conflict in the testimony. This was one of the demands of the lender and was enforced and the amount deducted to enhance the security by insurance on the house to the amount of $500. To the evidence in this behalf there was no objection at the trial. The policy was, also, upon request,

to be assigned and delivered to the holders of the debt as collateral security, although the property was worth about three times the debt. Wm. Bunn acted for his brother generally in effecting many similar loans. His action in this transaction has been confirmed, ratified and approved in all other respects and the benefits and proceeds thereof held and enjoyed. As he was manifestly authorized to make such deductions and in fact did so, we think, under the circumstances of this case, the consequences of his neglect in the complete performance of this duty undertaken upon adequate consideration should not be further visited upon the respondent to the harsh and extreme extent of declaring that the principal of said bond has become due and his property subject to sale, for said alleged breach to procure insurance. To do so under the undisputed facts of this case would savor of such oppression as to warrant its refusal. 61 Mo. *supra*, 565.

We, also, approve the court's action in refusing to admit the testimony offered and the reasons assigned therefor by the court are satisfactory to us. The evidence was incompetent and irrelevant and had no material connection with the inquiry in progress before the court. As we find no error in the case we affirm the judgment. All concur.