NORA L. S. LUNSFORD et al., Appellants, v. WILLIAM H. DAVIS et al., Appellants.

Division One, September 21, 1923.

1. **DEED OF TRUST:** Foreclosure: Conditions Not Expressed in Note. A deed of trust may contain a condition for foreclosure before the maturity of the note which it secures, and it may contain provisions upon which a forfeiture may be declared independent of the terms of the note.

Lunsford v. Davis.

2. ———: ———: **Failure to Pay Taxes.** Where the deed of trust required the makers to "pay, when due or within the time required by law, all taxes hereinafter levied" and "if said agreement be not performed" then the mortgagees "may pay said taxes" and "if default be made . . . in the faithful performance of said agreement" then the mortgagees "may pay such taxes" and "for the re-payment of all moneys paid . . . these presents shall be security in like manner and with like effect as for the payment of said note" and "the whole of said note shall become due and be paid" and the trustee, out of the proceeds of sale, after paying costs thereof, shall pay "next" to the mortgages "all moneys paid for taxes," there was a default upon the mortgagors' failure to pay delinquent taxes, and the mortgagees were empowered to cause said deed of trust to be foreclosed, although they did not pay the taxes before the sale and nothing was due them on account of unpaid taxes. The duty to pay the taxes rested primarily upon the mortgagors, and the mortgagees had the right to pay them and to be reimbursed, but the deed of trust did not make it imperative that they first pay the taxes and make demand for reimbursement before they might claim a breach of the covenant.

3. ———: ———: **Duty of Trustee: Disregarding Interests of Makers: Sale at Unusual Hour: Inadequate Price.** Contrary to the general custom the trustee made the sale at eleven o'clock in the forenoon, and the selection of the unusual hour was not casual, but to aid the purpose of the mortgagees to be the only bidders and to obtain the property upon a bid not in excess of the debt; there was no other bidder, nor was any person present in any way interested in behalf of the mortgagors, and the property was sold to the mortgagees at an inadequate price, and for the amount of the debt and costs; and the trustee, by his own utterances and conduct, is shown to have had in mind the interests of the mortgagees only, and to have been, if not hostile, wholly indifferent, to any right of the mortgagors. *Held,* that a trustee is not the mere agent or attorney for the mortgagees, but he is the trustee of both debtor and creditor, and he must be fair and impartial, and use all reasonable efforts and methods to make the property bring as much as possible, and under the facts the sale was invalid, and the trustee's deed should be set aside.

4. ———: ———: **Setting Aside Sale: Default in Paying Taxes: Redemption.** Where the debt was not due under the terms of the note, but only because the terms of the deed of trust made a failure to pay taxes when due a default, a court of equity, in the exercise of its flexible powers to adapt the relief to the circumstances of the case, will not simply set aside the sale in order

to permit the mortgagor to redeem, but will set it as de altogether, and restore the status of the deed of trust and of the parties, conditioned upon payment, and making provision of opportunity for the mortgagors to avoid the default by payment, of the overdue taxes.

5. ———: ———: ———: **Offer to Redeem: Irregularity.** A covenant in the deed of trust, that "if the maker of this note owns the property securing same, this note when due may be extended for five years, provided fifteen thousand dollars of the principal sum has been paid at that time," cannot be eliminated or ignored; and where the note was dated October 1, 1918, was due five years after date, the deed of trust was foreclosed February 21, 1921, for failure to pay certain delinquent taxes, and before its foreclosure the mortgagors had paid $10,000 on the principal, they were not required, as a condition for setting aside the foreclosure sale, to offer to redeem. The sale, being tainted with fraud and made at an inadequate price, cannot, in view of said covenant, and the ten thousand dollars paid thereunder, be held to have been only irregular.

6. ———: ———: ———: **Offer to Pay Taxes.** Where the deed of trust made the mortgagor's failure to pay taxes when due a default, and foreclosure was based on that default, he must reimburse the mortgagees for taxes paid by them, as a condition for setting aside a sale to them, although they did not pay the taxes until after the foreclosure sale; and especially so where the mortgagor has in his petition expressed a willingness to pay them, and to require the mortgagees to pay them would be inconsistent with other provisions of the decree annulling the sale.

7. ———: ———: ———: **Removal of Trustee: Appointment of Successor.** Where the deed of trust names a trustee and provides that in case of his death, inability or refusal to act, or absence from the county, the sheriff shall succeed to the title and make the sale in case of default, the court, upon setting aside a sale, because of the trustee's wrongful conduct, should remove him, but should not appoint another, since to do so would be to disregard the provision which makes the sheriff his successor.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

AFFIRMED (*with modifications*).

*Scarritt, Jones, Seddon & North* for plaintiffs.

(1)　There was a positive and affirmative duty devolving upon Shook as trustee to have advised Lunsford of the amount of taxes claimed to be in default before making the sale and to afford him an opportunity of paying the amount, and not to connive with Davis and Cobb and by trickery and withholding information exact forfeiture. Hanson v. Neal, 215 Mo. 274; Borth v. Proctor, 219 S. W. 72; Meyer v. Ins. Co., 5 Mo. App. 245; Holdsworth v. Shannon, 113 Mo. 508; Stoffel v. Schroeder, 62 Mo. 147; Vail v. Jacobs, 62 Mo. 130; Stephenson v. Kilpatrick, 166 Mo. 262; Middleton v. Bacon, 262 Mo. 398; Daggett Hardware Co. v. Brownlee, 186 Mo. 621. (2)　There was a fixed purpose by hook or crook indwelling in the minds and hearts of Shook, trustee, and Davis and Cobb to despoil the Lunsfords of their equity in the Coates House properties, and unless equity intervenes Shook as trustee will accomplish that purpose for them. (3)　Shook, the trustee, was unlawfully subservient to Davis and Cobb, and the program for getting the property for Davis and Cobb was cut-and-dried and only equity can prevent the great iniquity sought to be perpetrated. (4)　The trustee's sale was held at an unusual hour contrary to and in defiance of the long and well established custom of holding such sales at two o'clock in the afternoon. This circumstance was of itself a badge of fraud and the whole transaction will be closely scrutinized in the conscience of chancery, and such sale set aside for good faith and fair dealing did not prevail. Borth v. Proctor, 219 S. W. 72; Holdsworth v. Shannon, 113 Mo. 508; Hanson v. Neal, 215 Mo. 250; Stephenson v. Kilpatrick, 116 Mo. 262. (5)　The price was wholly inadequate. The bid was perfunctory. It was framed up in advance. Everything was so arranged by Shook that there should be one bid, and only one, and that the property should go to Davis and Cobb, and so an equity of not less than $200,000 was wholly confis-

cated. Equity will avoid such a sale. Stoffel v. Schroeder, 62 Mo. 147; Stephenson v. Kilpatrick, 166 Mo. 262; Middleton v. Baker, 262 Mo. 398. (6) The Lunsfords honestly endeavored to pay all the taxes which it was their duty to pay and they honestly believed they had done so, and they so advised Davis and Cobb, who knew that the Lunsfords believed they were not in default. Shook, the trustee, knew this and his act in playing into the hands of Davis and Cobb in exacting a forfeiture under the circumstances was extortionate, contrary to equity and involved moral turpitude. (7) Under the terms of the deed of trust involved here as construed by the courts of this State the mortgagors have the legal right to pay or tender defaulted interest at any time before the foreclosure is consummated and so avoid a forfeiture. State ex rel. Merriam v. Ross, 136 Mo. 259; Philips v. Bailey, 82 Mo. 639; Walz v. Parker, 134 Mo. 458; Whelan v. Reilly, 61 Mo. 565. (8) The terms of the deed of trust fairly construed do not empower the trustee to make a foreclosure sale until the mortgagee shall have paid the defaulted taxes and demanded payment thereof from the mortgagor, or at least until the trustee shall have notified the mortgagor specifically as to the nature and amount of the defaulted items and shall have given an opportunity to make the required payment. No such course was pursued here and so the trustee was without power to foreclose and his deed is void. 2 Jones on Mortgages (7 Ed.) p. 799, sec. 1175a; Williams v. Townsend, 31 N. Y. 411; Heller v. Neeves, 93 Wis. 637; Union Trust Co. v. Grant, 148 Mich. 501.

*Stone, McDermott, Webb & Johnson* and *Gamble, Trusty & Pugh* for defendants.

(1) Plaintiffs' mistake as to whether the taxes were in default, if they were mistaken, affords no ground for setting aside the foreclosure. (2) There is no evidence that defendants induced plaintiffs to believe there was no default in taxes. (3) That plaintiffs are non-

residents did not absolve them from keeping the taxes paid up; nor was the alleged physical disability of one of them an excuse for such failure, even had such disability been proven; mortgagee's misfortune is no defense against express covenants. Lipscomb v. Life Ins. Co., 138 Mo. 17. (4) No duty on part of trustee to give personal notice of intended foreclosure sale to defendants' attorney; moreover both he and defendants knew it was advertised, hence express notice by trustee would have been superfluous. Million v. McRee, 9 Mo. App. 344; Harlin v. Nation, 126 Mo. 97. (5) Non-payment of taxes alone was sufficient to warrant foreclosure. Truchon v. Mackey, 171 Mo. App. 42. (6) No duty rested upon mortgagee to himself pay delinquent taxes as condition of right to foreclose. (7) Trustee not disqualified because: (a) Confidant of mortgagee. (b) Plaintiffs knew trustee's relationship to mortgagee when they accepted him as trustee. Cassady v. Wallace, 102 Mo. 575; Harlin v. Nation, 126 Mo. 97; Lipscomb v. Life Ins. Co., 138 Mo. 17. (c) That trustee held sale at eleven o'clock instead of two o'clock was under advice of competent counsel. (d) Not trustee's duty to drum up bidders. Million v. McRee, 9 Mo. App. 344; Hardwicke v. Hamilton, 121 Mo. 465. (8) Inadequacy of price obtained at trustee's sale not ground for setting it aside, but such inadequacy was not proven in this case. Hammond v. Scott, 12 Mo. 8; Phillips v. Stewart, 59 Mo. 491; Harlin v. Nation, 126 Mo. 97; N. Y. Store Co. v. Thurmond, 186 Mo. 410; Betzler v. Clark, 227 Mo. 388. (9) The sale held at eleven o'clock instead of at two o'clock does not justify setting it aside: (a) Because the sale was advertised to occur between nine a. m. and five p. m. and the evidence shows there was no universal custom to sell at two o'clock. Anderson v. Taylor, 227 S. W. 84; Groff v. Langsdon, 239 S. W. 1087. (b) Plaintiffs wanted to discourage outside bidders, and did not themselves intend to bid—hence cannot complain that sale was at unusual hour. Weir Lumber Co. v. Cordz-Fisher,

186 Mo. 388; Stoffel v. Schroeder, 62 Mo. 147; Holsworth v. Shannon, 113 Mo. 508; Montgomery v. Miller, 131 Mo. 595; Hanson v. Neal, 215 Mo. 256. (c) The requirement that the sale shall be at the usual hour is that all possible bidders may attend, but here the rule avails plaintiffs nothing, as they did not want the property bid in by anyone except the defendants. Goode v. Comfort, 39 Mo. 313; Phillips v. Stewart, 59 Mo. 491. (10) Fraud by defendants is not presumed, and is not proven. Hardwick v. Hamilton, 121 Mo. 465; Gerhardt v. Tucker, 187 Mo. 46, 57. (11) The petition makes no offer to redeem, contains no excuse for not making such offer, does not even ask for a re-sale, and hence does not entitle plaintiffs to relief. Schanewerk v. Holberecht, 117 Mo. 22; Biffle v. Pullam, 125 Mo. 108; Hume v. Hopkins, 140 Mo. 65; Long v. Long, 141 Mo. 352; Lipscomb v. Life Ins. Co., 138 Mo. 17; Axman v. Smith, 156 Mo. 286; Daggett Hdw. Co. v. Brownlee, 186 Mo. 621; Gerhardt v. Tucker, 187 Mo. 46; Adams v. Carpenter, 187 Mo. 613. (12) Courts cannot make contracts for parties, and the decree by reinstating the mortgage violates its express covenants. 13 C. J. 525; Truchon v. Mackey, 171 Mo. App. 42.

LINDSAY, C.—The plaintiffs, Nora L. S. Lunsford, and William G. Lunsford her husband, brought suit against defendants Davis and Cobb, and their wives, and against one John M. Shook, to annul a certain deed made to Davis and Cobb by Shook as trustee, under a deed of trust covering the Coates House hotel property in Kansas City, Missouri. Plaintiff Nora Lunsford acquired title to said property by warranty deed from defendant Davis, about October 1, 1918, in a trade, under the terms of which the plaintiffs concurrently paid to Davis $35,000 in money, conveyed to Davis 7000 acres of land in Alabama, and executed to him their note in the sum of $115,000, secured by a second deed of trust upon the hotel property. The deed sought to be annulled is the deed made by Shook as trustee under this second

deed of trust. In the consummation of the trade mentioned the plaintiffs also, about October 1, 1918, executed a first deed of trust upon the property to secure the sum of $75,000 borrowed by them from Groves Brothers Real Estate & Mortgage Company. Upon this loan the sum of $5000 was payable at the end of each of the first, second, third and fourth years from its date, and the remainder at the end of five years. The note secured by the second deed of trust is dated October, 1918, and due five years after date, bears interest at five per cent and the semiannual interest coupons were due April 1st and October 1st in each year. The note and coupons are to bear eight per cent after their maturity.

The deed of trust securing this note contains certain agreements as to payments and maturity not expressed in the note itself. After describing the terms of the note the deed continues: "Privilege given to pay one thousand dollars or any multiple thereof on any interest-paying date by giving sixty days written notice." And the deed also contains the further important provision or privilege: "If the maker of this note owns the property securing same this note when due may be extended for five years provided fifteen thousand dollars of the principal sum has been paid at that time." Shortly after the execution of this note the sum of $10,000 was paid and credited upon it, reducing the principal to $105,000. Davis retained this note for a time, and sold it to one Reitzel, who later sold and transferred it to defendant Shook, and he in turn sold and transferred it to defendants Davis and Cobb, who were the holders of the note at the time of the sale of the property under the second deed of trust, which occurred on February 21, 1921. On March 9, 1921, the Coates Hotel Company, the tenant, filed its petition setting up the fact of the sale under the second deed of trust, the conflicting claims of plaintiffs and defendants to the property and the rentals thereof, asked that the controversy be determined, and that meanwhile a receiver be appointed. A receiver was appointed in that proceeding.

On the 22nd day of April, 1921, the plaintiff filed the petition upon which this cause was heard. In its general tenor it is a charge made with much detail that defendants Davis and Cobb, and Shook the trustee, conspired together to acquire the valuable equity of plaintiffs, fraudulently, without right, in violation of the terms of the deed of trust, and in violation of the duty of Shook as trustee, and pursuant thereto did procure and effect a sale of the property at an unusual time, and under circumstances whereby Davis and Cobb were the only bidders and were enabled to purchase plaintiff's equity in the property at the bid and amount of their note, plus the costs of making the sale.

The plaintiffs prayed that the sale be set aside, the deed so made thereunder be declared of no effect, and that the second deed of trust be declared a subsisting obligation and be reinstated, as such, and also that defendant Shook be removed as trustee therein and a suitable person be appointed in his stead. The trial court so decreed, and appointed C. S. Jobes as the successor trustee. At the time of the sale under the deed of trust there was not any unpaid matured interest on the note, but there were taxes due against the property in the sum of $3969.22. Upon the fact of non-payment of this tax, in its relation to the terms of the second deed of trust, rests the claim of right of defendants Davis and Cobb to cause the sale to be made. Upon a denial that the existence of this unpaid tax constituted a breach of the terms of the deed of trust, authorizing its foreclosure, and upon the other circumstances preceding and attending the sale, above indicated, the plaintiffs found their case. Immediately after the sale, through Shook, defendants Davis and Cobb, as claiming ownership of the property, paid this tax. Plaintiffs in their petition expressed their willingness, if it should appear equitable and just, to pay any part of the expenses of the sale and to refund the amount of said tax, but, as asking that the deed of trust be reinstated and continued, the plaintiffs did not,

otherwise than to the extent just indicated, ask to be permitted to redeem the property. The court by its decree ordered defendants Davis and Cobb and their respective wives to execute a deed to plaintiffs conveying the property as subject to the deed of trust, and included a provision permitting the plaintiffs to pay, without prejudice, the interest coupons which had matured pending the suit. And the court decreed that plaintiffs, upon delivery to them by Davis and Cobb of a deed to the property, should refund to Davis and Cobb the said sum of $3969.22. The court also made provision through the successor trustee for a re-transfer of the policies of insurance appropriate to the disposal made of the property. The defendants filed a motion asking for a modification of the decree, and the plaintiffs also filed a motion for its modification.

The defendants, in their motion, expressly objecting to any decree which set aside the sale and trustee's deed, insisted that if the sale and trustee's deed be set aside it should be done only on the condition that plaintiffs be required to pay the debt and interest, with expenses of sale, and refund the said sum of $3969.22 tax money to defendants, but further insisted that if these be not required, the plaintiffs yet should be required to refund said sum of $3969.22 with interest. The court overruled this motion, whereupon defendants filed their motion for a new trial and thereafter took their appeal. The plaintiffs' motion asked the court so to modify the decree that they would not thereby be required to refund to defendants said sum of $3969.22. Their motion was also overruled. Plaintiffs filed no other motion, but applied for and were allowed an appeal.

The plaintiffs' case proceeds upon the theory that the alleged sale and the deed made thereunder were ineffective to change the status of the title, or the relation and obligations created by the deed of trust between plaintiffs and defendants Davis and Cobb. This is founded upon the claims, first, that there was no such breach

of the covenants of the deed of trust as authorized a foreclosure, and, second, that in the purpose to foreclose, and in the manner of proceeding to do so, the beneficiaries and the trustee designedly misled and deceived the plaintiffs, and conducted the sale in disregard of plaintiffs' rights, intending thereby to deprive plaintiffs wholly of their valuable interest in the property, and secure the same for themselves. The plaintiffs' case, in respect of the form of relief asked, proceeds also upon the theory and basis that the plaintiffs have been at all times and now are able, as well as willing, to perform all of the obligations imposed by the deed of trust. It is not necessary to set out the petition, since the nature of the specific allegations therein will sufficiently appear in referring to the evidence.

The answer of defendant admitted the allegations of the petition concerning the provisions contained in the first and second deeds of trust and in the notes secured thereby; that the second deed of trust contained the recital that it is subject to the first deed of trust; and that plaintiffs had paid the first installment note of $5000 secured by the first deed of trust. It appears that, by agreement between plaintiffs and the holders of the notes secured by the first deed of trust, payment of the second installment note of $5000 due October 1, 1920, had been deferred. Defendants admitted payment of $10,000 upon the note secured by the second deed of trust, and admitted that after plaintiffs had paid part of the taxes on the property, in the early part of December, 1920, plaintiffs learned there were further taxes to the amount of about $3700 which remained unpaid; that plaintiffs were able to pay said taxes, and could and would have done so had they made the necessary investigation and attended to the making of the necessary remittance. The answer averred that these taxes were overdue, and constituted a lien upon the property prior to other liens, which plaintiffs knew or might have known; and admits the beginning on January 28, 1921,

of publication of notice of sale to take place on February 21, 1921; avers that plaintiffs had knowledge of the publication, and permitted it to continue; admits that prior to January 28, 1921, plaintiffs had engaged a member of the bar at Kansas City to advise with them concerning their business affairs at Kansas City; that defendant Shook as trustee called to his aid a member of the Kansas City bar by whose advice and direction the sale was cried by Shook at eleven o'clock A. M. on said 21st day of February, 1921, and the property was struck off to defendants Davis and Cobb, at the price of $107,875.62, which was the estimated amount of the note with interest, and costs of sale; and the answer also admits that "the aforesaid attorney and counselor of the plaintiffs was then in his office in Kansas City and prepared to take any suitable action that was necessary to protect the rights of the holders of the indebtedness secured by the said deed of trust and of the rights of plaintiffs herein, as averred in the petition."

The answer admitted the making and recording by defendant Shook, on the day of sale, of his deed to Davis and Cobb, his making demand upon the tenant of the property, and his causing notations to be made upon the insurance policies to the effect that the interest of plaintiffs in the property had passed to defendants Davis and Cobb; and the answer also admitted that defendant Shook forthwith paid the taxes referred to. The defendants denied the charges of fraud, collusion and conspiracy. They pleaded that plaintiffs, having knowledge or means of knowledge of the publication of the notice of sale, by their silence and failure to object to its legality, and by permitting it to continue and said sale to take place, and said deed to be recorded, and permitting defendants to incur and pay the expenses thereof, and to pay said taxes, were estopped to question the validity of the sale and deed. The answer of defendants also set up the pendency of the proceeding brought by the tenant, Coates Hotel Company, and asked that the proceedings be consolidated; that all rights of

all parties be determined; that Davis and Cobb be adjudged owners in fee simple of the property, and their title thereto be quieted as against the claim of plaintiffs, and for general relief.

The defendants also filed a cross-petition, wherein, after setting forth facts concerning the indebtedness and the deed of trust, the sale thereunder, the claims of plaintiffs and the refusal of the tenant to recognize the ownership of defendants, and after denying that plaintiffs had any interest in the property, they alleged "that if said trustee's deed and the sale by the trustee hereinbefore set forth, is for any reason void or invalid, nevertheless, the debt secured by said deed of trust is, on account of the facts hereinbefore stated, matured, long overdue and wholly unpaid, and by reason thereof said William H. Davis and Samuel E. Cobb are entitled to have said debt paid in full, together with taxes in the sum of more than five thousand dollars, which they have paid upon the said property, repaid to them by said Nora L. S. Lunsford and William G. Lunsford; that said trustee's deed in no event should be set aside unless and except the amount so as aforesaid due said William H. Davis and Samuel E. Cobb first be paid by said Lunsfords."

The defendants under their cross-petition prayed the court to hear and determine all the rights and claims of all the parties and to award complete relief, legal or equitable, to the several parties as fully as "the court might or could in any other or different action brought by the parties or any one of them."

Plaintiffs filed a general denial as a reply to defendants' answer, and filed an answer to the cross-petition consisting of a general denial, coupled with a statement and reference making their petition a further answer. The court by its decree dismissed defendants' cross-petition.

The paragraph of the second deed of trust containing the covenants, and provisions concerning a breach thereof, is as follows:

"And whereas, said parties of the first part agree with said party of the third part and his endorsees or assignees of said promissory note, . . . and each of them, to pay on demand all taxes and assessments, general and special, now existing against said lands and improvements, and to pay when due or within the time required by law, all taxes and assessments, general or special, hereafter levied or charged thereon or therefor, and also to keep the improvements upon said land constantly and satisfactorily insured until said note, . . . be paid, for the sum of at least $200,000 fire and $50,000 tornado insurance, and the policy or policies thereof constantly assigned or pledged and delivered to holder of first mortgage note for further securing the payment of said note, . . . with power to demand, receive and collect any and all moneys becoming payable thereunder and the same to apply toward the paying of said note, . . . unless otherwise paid, and also to keep said land and improvements thereon free from all statutory lien claims of any kind; and if any or either of said agreements be not performed as aforesaid, then said party of the third part, or his endorsers or assignees or any of them, may pay such taxes and assessments or any part thereof, and may effect such insurance for said purpose, paying the cost thereof, and may also pay the final judgment for any statutory lien, including all costs; and for the repayment of all moneys paid in the premises, with interest thereon from the time of payment at the rate of eight per cent per annum, these presents shall be security in like manner and with like effect as for the payment of said note. . . .

"Now, if the said note, . . . and the interest thereon be paid when due, and said agreements be faithfully performed as aforesaid, then these presents including the lease hereinafter set forth, shall be void; and the property hereinbefore conveyed shall be released at the cost of said part— of the first part; but if default be made in the payment of said note, . . . or any

part thereof or any of the interest thereon when due, or in the faithful performance of any or either of said agreements as aforesaid, then the whole of said note . . . shall become due and be paid as hereinafter provided, and this deed shall remain in force, and the said party of the second part,'' etc.

The trial was long and the record is voluminous. The plaintiffs lived at Birmingham, Alabama. The defendants Davis and Cobb are bankers residing at Topeka, Kansas, and appear from the evidence to have dealt extensively in real estate in various parts of the country. Shook was a resident of Kansas City, and dealt in real estate, and appears to have been frequently, and for a considerable period, associated with Davis and Cobb in real estate deals, and to have acted as agent for them, and they were personally on intimate terms.

Witnesses differed in their estimates of the value of the Coates House property. The estimates ran from $250,000 to $500,000. The rental of the property under a lease made in 1917, was $24,000 per annum. Cobb stated upon cross-examination that the rental of the property, if applied on the indebtedness, would discharge it in ten years. There was testimony tending to show that at the time of the trial its fair rental value was $36,000 per annum. There was fire insurance carried upon the property in the amount of $279,500 and $50,000 tornado insurance.

The circumstances concerning the payment of taxes in the period shortly prior to the sale are material. On December 10, 1920, defendant Cobb wrote letters to plaintiffs advising them of a claim for special taxes held by an attorney in Chicago, stating also that certain payments for insurance were past due, and stating that unless plaintiffs paid all claims for taxes, or otherwise, a foreclosure proceeding would be started. The plaintiffs replied saying they had sent $500 on the insurance, and that they had written the Chicago attorney, whose address had been given by Cobb, and would pay that

claim. From the letter of plaintiff William Lunsford to the Chicago attorney it would appear that Shook had received from him notice of that claim, but had held it for about three months before forwarding it to plaintiffs.

On December 31, 1920, the plaintiffs remitted $2208.-92 for city taxes. This was an excess payment, and $350.23 of it was returned to them. On January 28, 1921, they paid state and county taxes amounting to $3946.95. This was the day on which publication of the notice of sale was begun. On January 31, 1921, they paid $69.11 to the city treasurer to pay a special assessment, and on February 14, 1921, they paid to the city treasurer the sum of $583.67, in settlement of certain special tax bills held by the Hauchett Bond Company, making a total paid during that period of $6808.66. The special tax bills held by this company appear to have been issued to fall due at different times. There were others remaining unpaid, but not due.

Plaintiff William Lunsford testified that he wrote the county collector asking the amount of taxes due on the Coates House property, and in reply received a form of receipt for $3946.95, the amount above mentioned, which he paid. He testified that he assumed this was all the tax due at that office, there being no statement from the collector of any other taxes due. He testified that the plaintiffs were able, at the time, to pay the other unpaid taxes, and would have done so had they known of them. On January 29, 1921, plaintiff William Lunsford wrote to defendant Davis, who was then in Florida, stating: "In compliance with your request, I am writing to inform you I have paid the city taxes sometime ago, about last of December or first of January and yesterday I got up the money and paid state and county taxes, fees and costs amounting to $3946.95. Please inform Mr. S. E. Cobb, as I understand you to say he would be with you there in Florida." Davis replied, on February 1st, writing: "Thank you for your card of the 29th advising that all taxes are cared for. Mr. Cobb and family are here and have shown him card." Lunsford,

however, on cross-examination gave as a reason for delay that he thought the taxes for 1920 did not become delinquent until March 1st.

Davis in his testimony admits that he thought Lunsford believed he had paid all the taxes, and that he did not advise him that there were tax items unpaid. Cobb testified that he made no inquiry about the matter: "I instructed both Mr. Shook and Mr. Hogsett to continue the foreclosure proceedings provided the taxes were not paid in full" or if "any remnant remained unpaid," and that his instructions were given to and through Shook. Prior to this time the plaintiffs had dealings or negotiations with L. D. Tolle, an attorney of Kansas City, in reference to representing them in their business at Kansas City. Defendant Davis had sued the plaintiffs upon an alleged shortage in the number of acres conveyed by plaintiffs to Davis in the trade for the Coates House property. On January 31st, Tolle sent a "collect" telegram to William Lunsford advising him of the publication of notice of sale of the property. This was returned to him undelivered. On February 13, 1921, Tolle wrote to Lunsford, advising him of the publication, and Lunsford acknowledged this in a letter dated the 14th of February, in which he wrote that a friend had sent him a copy of the advertisement. He gave Tolle no instructions, and dealt chiefly with the fact that they were in disagreement as to the fee to be paid Tolle.

It also appears that Charles C. Nichols, a member of the bar at Kansas City, who had never heard of the Lunsfords until February 16, 1921, on that date, saw the publication of the notice of sale in the Daily Record newspaper, and sent a clipping to Lunsfords. But Nichols did this solely of his own motion. Shook began the publication of the notice of sale on the 28th day of January, 1921. Immediately thereafter he went to Florida, to visit at the home of Davis where Cobb and his family were also. Shook remained there until February 18th, when he departed for Kansas City, to make the sale on the 21st. As to this Shook testified:

"I knew everything that occurred in regard to this property—I said in regard to this foreclosure I knew everything that took place. I was living in the home in Florida where Mr. Cobb and his family were visiting, and we were together every day.

"Q. As their guest? A. Yes, as Mr. Davis's guest.

"Q. You were visiting there? A. Yes, sir, and Mr. Cobb and his family were visiting there, spending the winter.

"Q. They did not charge you any board, did they? A. No.

"Q. You just went down there and visited? A. I go down there every time I go to Florida and stay at Mr. Davis's home."

His evidence is that he was instructed by Davis and Cobb to bid the property in, or have it done, at the amount of the note, and to employ an attorney. He engaged Mr. Hogsett as attorney. He testified:

"Q. Well, you were acting as agent for them, of course? A. Yes, sir.

"Q. And you tried to discharge your agency to them? A. I did.

"Q. And see that they got the property? A. If there was nobody else there to bid, and nobody else did bid."

. The arrangement between Shook and Mr. Hogsett was that they would make the sale at eleven o'clock in the forenoon. Concerning this and the relation of Tolle, the attorney in correspondence with the Lunsfords, Shook testified:

"Q. Did you give Mr. L. D. Tolle, attorney of record for Mrs. Lunsford, a notice that you were going to be there at this time, eleven o'clock or about that? A. No, sir.

"Q. You knew he was here in the city, didn't you? A. I did not know where he was and did not care.

"Q. You knew he was here in the city, didn't you? A. I did not know where he was and did not care.

"Q. You knew he was the attorney of record for them? A. I knew he had been.

"Q. And you knew where he was right at that day?
A. No, I didn't know where he was and didn't care where
he was?

"Q. Did Mr. Hogsett know he was the attorney of
record? A. I don't know. He did not say whether he did
or not.

"Q. Did you mention it to him? A. No, I told him
that Tolle had been the attorney, but we had not heard
anything from Tolle. The notice was run in the papers."

Hogsett explains his failure to notify Tolle, in
part by the fact that he had been told by a Mr. Burns
that Tolle had been heard to say that the sale would be
invalid because the mortgagees had not themselves first
paid the delinquent tax and made demand for repayment
before declaring forfeiture and proceeding to foreclose.
It appears also that Nichols, who was purely a volunteer
in the matter had on that morning inquired of Shook the
hour when the sale would take place. Hogsett says he
supposed Nichols was employed by Tolle, and that he
thought it was Tolle's purpose to lie by and let the sale
take place. Shook told Nichols the sale would take place
at eleven o'clock. Shook testified that when he and
Hogsett reached the court house he saw a man very
much like Nichols standing there, who turned around and
went into the court house. He says they waited there
ten minutes. Nichols testified:

"I went to the court house and stayed until about
five or ten minutes after eleven o'clock, and no one
showed up, and so I just supposed it was deferred until
the usual time, two o'clock.

"Q. So there was no sale cried and you didn't see
this Mr. Shook or Mr. William Hogsett at that time and
place while you were there? A. No, sir.

"Q. They didn't come up to the time you left?
A. No, sir."

The sale was cried by Shook. There were no bid-
ders, nor other bid than the one made by Mr. Hogsett
for Davis and Cobb of $107,895.62, the amount as pre-
viously calculated by them to cover the amount of the

note and expenses. They then repaired to the office of Hogsett where the trustee's deed was made. Shook exhibited this to the manager of the tenant, Hotel Company, and served a written notice; called up the insurance agency through which the policies were written, giving notices of the change of ownership, procured the necessary stamps for the deed, and at 1:25 P. M. filed the deed for record.

Tolle testified that he went to the court house at fifteen or twenty minutes before two o'clock on that afternoon, and there saw Shook and another man leaving. He then went to the office of the Recorder of Deeds and found that the deed had been filed for record. Tolle testified that he had at the time no knowledge that Nichols had made inquiry of Shook concerning the sale, nor that Nichols had desired to be present, and that he had not directly or indirectly been associated with Nichols in any way touching the sale, and that he had no knowledge or intimation that the sale was to take place at eleven o'clock. He testified to the effect that Lunsford had written advising him that he, Lunsford, was sick, and that notwithstanding the somewhat indefinite and unsatisfactory state of his professional relation with Lunsford, he had intended to give notice at the sale that an action was pending, to have Shook, the trustee, removed, and also to protest the validity of the sale upon the ground that the mortgagees were not authorized, under the facts and the terms of the deed, to foreclose. The trustee's deed recites that the sale was held "beginning at 11:10 o'clock of said day." Tolle testified that he relied upon the custom as to making sales of this character, which was to make them at two o'clock P. M., or as near thereto as practicable. A. L. Cooper, R. E. Ball, Thomas H. Reynolds and several others whose practice at the Kansas City bar had extended over periods of twenty-five years or more, testified that it was and had been for many years the custom and uniform practice to hold sales by trustees under deeds of trust at two o'clock

in the afternoon. It was also shown that this custom prevailed in sales made by the sheriff under deeds of trust or otherwise. There was some testimony, however, that occasionally sales had been made at other hours of the day.

It was shown in evidence that about April, 1919, the Lunsfords had defaulted in the payment, when due, of an interest coupon, and that this property had been advertised for sale. Mrs. Lunsford testified that a short time prior to April 1, 1919, she and her husband were called away from home through the sickness of Lunsford's mother, who afterwards died; that before going they informed Shook of the circumstances; that upon their return home, shortly after April 4, 1919, they learned that the property was advertised for sale by Shook, as trustee; that they paid the interest and expenses, and that though the advertisement continued to run in the paper the sale was not made. It is also in evidence that defendant Davis had brought a suit against the plaintiffs upon matters arising out of the terms of the trade of the land in Alabama, and the hotel property. This suit was brought at Kansas City, and Lunsfords' property was attached, and in arranging bond and other steps in connection with that suit Shook was shown to have been actively interested in behalf of Davis. The testimony of the plaintiff was to the effect that at the time of the sale they had a balance in a bank in Kansas City of more than two thousand dollars, and that when they came to Kansas City on the 24th of February, having been advised that the sale had taken place, they brought about $4000 of additional money with them, and that they could and would have paid the balance of taxes due, had they known that there was a balance due; that they thought they had paid all of the taxes that were due, and did not believe the property would be sold. The clause in the deed of trust in reference to payment of taxes has been set out. The notice of sale recited as the ground of foreclosure that "default

has been made in the payment within the time required by law of taxes and assessments, general and special," with the statement that thereby under the terms of the deed of trust the whole of the note secured had become due and payable and was overdue and unpaid. The deed made by the trustee made no reference to a default for non-payment of taxes, but recited a default in the payment of the indebtedness secured by the deed of trust, to-wit, "note for $115,000, with interest at five per cent per annum," and further recited that the trustee had proceeded "at the request of the legal holder and owner of all unpaid indebtedness secured by said deed." In addition to the unpaid taxes which have been referred to, it appears that there had been foreclosure by Kansas City of a tax lien upon a parcel of ground forming part of the property. This was redeemed by Shook the trustee, on March 3, 1921. The amount with costs was $152.87.

The plaintiffs insist that under the terms of the deed of trust there was no default authorizing a foreclosure until and unless the mortgagees had themselves first paid the taxes, and the mortgagors had then failed to pay. The cases recognize the validity of a condition in a deed of trust whereby it may be foreclosed before the maturity of the note which it secures, and that it may contain provisions upon which a forfeiture may be declared independent of the terms of the note. [Wilson v. Reed, 270 Mo. 400; Rumsey v. People's Railway Co., 154 Mo. 215; Truchon v. Mackey, 171 Mo. App. 42; Philips v. Bailey, 82 Mo. 639.] This deed recites various agreements of the mortgagors, and among them "to pay when due or within the time required by law, all taxes and assessments, general or special," followed by the conditions that "if default be made in the payment of said note, or any part thereof, or any of the interest thereon when due, or in the faithful performance of any or either of said agreements as aforesaid, then the whole of the said note shall become due, . . . and the party of

300 Mo.—34

the second part may proceed to sell the property." Germane to these provisions is the provision that, "if any or either of said agreements be not performed, . . . the part—of the third part . . . may pay such taxes and assessments, . . . and for the repayment of all moneys paid in the premises," with interest at eight per cent the deed shall be security in like manner and effect as for payment of the note; and the further provision that the trustee out of the proceeds of sale, after paying the costs thereof, shall pay "next to said third party . . . all moneys paid for insurance or taxes and judgments on statutory liens."

In this case the mortgagees did not pay the unpaid portion of taxes before the sale. They made this payment afterwards, and as asserting ownership. At the time of the sale the money representing this unpaid tax was not due to the mortgagees. They had paid out nothing on that account. There was therefore nothing on account of taxes which could have been re-paid to them out of the proceeds of the sale, even had an outsider purchased the property. But, the duty to pay the taxes rested primarily upon the plaintiffs. The defendant mortgagees had the right to pay, and to be reimbursed, but the deed does not make it imperative that they first pay delinquent taxes and make demand for reimbursement before they may claim a breach of the covenant. Under the terms of the deed there was default through non-payment of the taxes. This subject is fully discussed in Truchon v. Mackey, 171 Mo. App. 42.

There remains the question of the circumstances under which the sale was made, of the conduct of the parties, and particularly of the trustee. The trial court decreed the sale and the deed made thereunder to be illegal and void; and adjusted the rights of the parties, some of the details of which have been referred to. That defendants Davis and Cobb should reconvey the property to plaintiffs within ten days, and thereupon defendants should re-pay the sum of $3969.22, paid by defendants

for taxes after February 21, 1921; and that the trustee who, it is recited, had accepted his appointment, should make assignment to plaintiffs of the insurance policies, if defendants failed to do so. The decree also contained the further provision:

"It is further ordered, adjudged and decreed that if the plaintiffs shall pay the interest on the indebtedness represented by said note of $115,000, on which there is a credit of $10,000, at the rate of five per cent per annum from October 1, 1920 (being the date to which the last interest was paid), up to and including the date of the interest coupon last maturing prior to the time this decree becomes a final decree, then the defendants shall, upon such payment, cancel and deliver to the plaintiffs all the interest coupons on said note maturing according to their terms within that interval, and the plaintiffs will have the right to pay such interest on said note at any time within thirty days after this decree becomes final, and if they pay it within that time, the trustee in said deed of trust shall not advertise or foreclose said deed of trust on account of failure to pay said interest coupons maturing within that period."

The decree must be held to proceed upon the theory that the sale and deed having been found and adjudged to be invalid, the status existing before the foreclosure had been restored; and that the mortgagees might redeem as if no sale had been made, not by paying the note and interest, but by paying the unpaid obligation the non-payment of which had constituted the default.

Under the evidence the court was warranted in setting aside the sale. The trustee by his own utterances and by his conduct is shown to have had in mind the interests of the mortgagees only, and to have been if not hostile, wholly indifferent, to any right of the plaintiff's. The true relation of the trustee is stated in Axman v. Smith, 156 Mo. l. c. 290:

"A trustee is not the mere agent or attorney for the holder of the note, but he is the trusted agent of both

debtor and creditor. [Jones on Mort. (5 Ed.) sec. 1771.] In the sale of property under a deed like the one in question, he should use all reasonable effort and methods to make it bring as much as possible, and he should be fair and impartial as between debtor and creditor'' (citing cases).

The trustee made the sale at an unusual hour—contrary to what was shown to be the general custom which prevailed and had prevailed for many years at Kansas City. The selection of the unusual time to make the sale does not seem to be merely casual and unconnected with the purpose that the mortgagees should be the only bidder, and should obtain the plaintiffs' interest in the property upon a bid not in excess of the amount of the debt. There was no other bidder or person present in any way interested in behalf of the mortgagors, and the property was sold at an inadequate price. Taking into consideration the amount of the second mortgage debt, and the mere conservative testimony as to value, the price was more than $100,000 short of the worth of the property. Under such a combination of circumstances, want of impartiality in the trustee, a sale made at an unusual time, and for an inadequate price, the trial court in declaring the sale invalid followed precedents prevailing and numerous. [Whelan v. Reilley, 61 Mo. 565; Stoffel v. Schroeder, 62 Mo. 147; Vail v. Jacobs, 62 Mo. 130; Holdsworth v. Shannon, 113 Mo. 508; Dagget Hardware Co. v. Brownlee, 186 Mo. 621; Hanson v. Neal, 215 Mo. 256.]

It is true as contended by the defendants that in most of the cases wherein it was sought to set aside sales of this character, there was an offer to redeem. Ordinarily in those cases the principal debt was due under the terms of the note given, and the sale set aside as inequitable, and to permit redemption. But, within the flexible powers of courts of equity, in adapting the relief afforded to the circumstances of the case, it has been held that such sales may be set aside altogether.

[Axman v. Smith, 156 Mo. 286; Stephenson v. Kilpatrick, 166 Mo. 262; Harper v. Mansfield, 58 Mo. 17; Mayer v. Ins. Co., 5 Mo. App. 245.] In this case the debt was not due under the terms of the note, but became due only through the terms of the deed of trust through default in the payment of taxes. It is the settled rule in this State that tender or payment of interest due without the principal is sufficient to prevent a sale under a deed of trust, although the deed provides that, in case of failure to pay the interest as it became due, the entire debt shall mature and the property may be sold. [Philips v. Bailey, 82 Mo. 639; State ex rel. v. Ross, 136 Mo. 273.] In Philips v. Bailey a like rule was applied where the default arose under the terms of the deed of trust, through non-payment of taxes. Under the circumstances shown it was not error for the court to declare the sale and deed thereunder invalid, and to restore the status of the deed of trust and of the parties, conditioned upon payment, and making provision of opportunity for plaintiffs to avoid the default, by payment, of the overdue taxes.

The defendants cite Gerhardt v. Tucker, 187 Mo. 46; Adams v. Carpenter, 187 Mo. 613 and Hurst Automatic Switch & Signal Co. v. Trust Co., 216 S. W. 954, in support of their contention that the sale was at most, only irregular, and that plaintiffs' remedy, if any, must be founded upon an offer to redeem. There is language used in these cases to that effect.

In the case at bar the deed of trust contains an important provision which distinguishes it from the cases referred to and which cannot be entirely ignored. It is the provision: "If the maker of this note owns the property securing same this note when due may be extended for five years provided fifteen thousand dollars of the principal sum has been paid at that time." The terms of this provision applied and can be applied to the plaintiffs only, and if they remained owners at the end of five years, and only if by that time they paid

$15,000 of the principal. A payment of $10,000 is acknowledged. The purpose of the defendants and the irregular acts in making the sale, acts of a kind which are said to smack of fraud, went to an elimination of the foregoing provision along with the acquisition of the property by defendants. An order of re-sale, or an order requiring a redemption would eliminate that provision. The decree of the court is not inappropriate in its application to the situation presented.

The position taken here by plaintiffs that they should not be required to make the payment of the taxes is untenable. It is inconsistent with their own expression of willingness to do so contained in their petition, and it is inconsistent with the other grounds upon which the trial court, as a court of equity, granted the form of relief given. They are in no way entitled to be relieved to that extent. The payment of taxes is an obligation imposed upon the plaintiffs.

The defendants urge that the court erred in removing the trustee and appointing a successor, since the deed of trust contained a provision that in case of the "death, inability, refusal to act or absence from Jackson County, Missouri, when any advertisement and sale are to be made hereunder, then whoever shall be Sheriff of Jackson County, Missouri, at the time when any such advertisement and sale are to be made (who shall thereupon for the purpose of the advertisement and sale succeed to th second party's title to said real estate and the trust herein created respecting the same) may proceed to sell," etc. By the *habendum* clause also the estate runs "to the said party of the second part, and to his successors hereinafter designated, and to the assigns of him and his successors."

The plaintiffs asked the removal of the trustee, and upon the evidence the court should be sustained in removing him from the execution of the trust. But the court erred in disregarding the provision which made the sheriff his successor. [Swabey v. Boyers, 274 Mo.

332.]   Except in that particular the decree of the trial court should be affirmed as against the defendant, and it should be affirmed as against the cross appeal of the plaintiffs.

In that we have reinstated the deed of trust as was done by the trial court, and to the end that this suit in equity be brought to an end, the judgment of the trial court is modified by striking therefrom that portion which names and appoints a new trustee, and as thus modified the said judgment is affirmed.   This leaves the sheriff to act under the deed of trust reinstated by the judgment. It is so ordered.   *Small, C.,* not sitting.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is hereby adopted as the opinion of the court. All of the judges concur.