J. L. BAY, ET AL., APPELLANTS v. WM. P. ELMER AND WINNIBERT A. FALK, EXECUTOR OF ESTATE OF F. X. FALK, DECEASED, RESPONDENTS.—237 SW (2) 932.

Springfield Court of Appeals.  March 26, 1951.

390

*B. G. Dilworth* and *E. W. Bennett,* for Appellants.

*Raymond S. Roberts, Harry J. Petrequin,* for Respondents.

McDOWELL, J.—This is an injunction suit to restrain the foreclosure of a deed of trust. Suit filed in Dent County, Missouri, June 4, 1949. A temporary injunction was granted, the cause was tried by the

court October 17, 1949, and judgment rendered for defendants dissolving the temporary injunction and dismissing plaintiff's petition. Plaintiffs appeal.

Plaintiffs' petition alleged that on March 10, 1941, they executed their promissory note of that date, payable to F. X. Falk, and secured the same by deed of trust on certain lands described in the petition; that this deed of trust was duly recorded. Defendant William P. Elmer was made trustee.

The petition states that the trustee, under said deed of trust, caused to be published May 26, 1949, a notice advertising the real estate to be sold at the court house door in Salem, Dent County, Missouri, June 20, 1949; that F. X. Falk is dead and defendant, Winnibert A. Falk, is the duly appointed executor of the estate of F. X. Falk and legal holder of the note. The petition states that the note had been fully paid and prays the court to enjoin the foreclosure and sale of said lands, and asks that said deed of trust be cancelled and for other necessary and proper relief. The answer is a general denial of payment.

The trial court rendered the following judgment:

"Now on this day the Court having prior taken case under advisement during the August 1949 term, enters order this date finding the issues for the defendants, and the temporary injunction heretofore issued, is by the court dissolved and plaintiff's petition dismissed."

The trial court stated that the proof made by plaintiffs was too indefinite for the court to say that it showed payment of the note in question.

Plaintiffs admit that they borrowed $1,000.00 from F. X. Falk March 10, 1941, and gave their promissory note to him, due one year after date, secured by a deed of trust on the real property described in the petition. Plaintiffs contend that at the time of the giving of this note and deed of trust there was an oral agreement that the same was to be paid out of timber owned by plaintiff, Bay, which was to be cut and delivered to the payee's mill; that said note was given to the payee so the same could be used as collateral security and that the amount thereof was to be deducted from the timber coming off of Bay's land.

We think the testimony is undisputed that plaintiffs owned 320 acres of timbered land in Dent County, Missouri; that F. X. Falk owned a large body of timbered land adjoining plaintiffs' land and that he established a saw mill on said land in 1935 for the purpose of marketing said timber; that he employed plaintiff, James L. Bay, as foreman at said sawmill at a salary of $100.00 per month; that he also employed plaintiffs' trucks and teams and men to cut and haul timber to this mill from the Falk's land and that he purchased timber and stave bolts from plaintiffs which came from plaintiffs' land. There is no dispute that plaintiff, Bay, was employed by the deceased Falk to haul lumber to customers of the Falk's mill to different parts of the

state and to other states at an agreed price per thousand feet. There is no dispute that the business relations of these parties was carried on by crediting plaintiff with the amounts due him for the various services and for timber bought and that plaintiff drew money from the mill as he needed it and was charged on the books with such sums. This debit and credit system continued throughout the entire business relations, which was about 8 years.

To prove the oral agreement that the note in question was to be paid out of timber cut from plaintiffs' land, plaintiff's son, James L. Bay, Jr., testified that he was present at the time his father and Mr. Falk agreed on the loan; that Mr. Falk told plaintiff that he would let him have $1,000.00 and that plaintiff told Mr. Falk that he would be willing to give him a note and that Mr. Falk said that would be fine; that he could borrow money against this note if he needed it back in his business. The witness testified that Falk told plaintiff, at that time, he would deduct the $1,000.00 from the timber coming off of plaintiff's farm. The witness testified that plaintiff first asked Mr. Falk for a settlement; that he told him he wanted to buy some property and that Mr. Falk said he didn't have time to make a settlement but that he would lend him $1,000.00. This witness testified that his father was cutting timber at the time of the giving of the note from his own land and selling it to Mr. Falk, but at least three-fourths of the timber so sold was cut and hauled to the Falk's mill after the giving of the note.

Plaintiff's son, Robert Jerome Bay, testified that he worked at Falk's mill from 1937 to the spring of 1942, and that he heard the conversation between his father, James L. Bay, and F. X. Falk relative to the giving of the $1,000.00 note and deed of trust and he gave this answer: "And then Mr. Falk and my father said that he could make a note for this thousand dollars and it would be taken out of the timber that came off of my father's farm." This witness also testified that at least three-fourths of the timber cut from his father's farm was sold to Falk's mill after the giving of the note in question.

Plaintiff then offered the testimony of two expert witnesses who testified that, at the request of plaintiffs, they went upon plaintiffs' land and estimated the amount of timber cut therefrom and sold to Falk's mill. They testified they made the estimate from the stumpage. They stated they took one acre in each forty acres of land and determined the amount of lumber that came from that acre and then estimated the timber cut from the entire tract. This testimony showed that there was 138,880 feet of red oak, 179,160 feet of pine and 178,560 feet of white oak. They stated red oak was worth $5.00 per thousand feet, pine $10.00 per thousand and white oak $20.00 per thousand, and that the total value of the timber so cut was $11,040.00. They deducted ten per cent for error, which made the timber value $9,936.00.

394

Plaintiffs then offered the deposition of defendant, Winnibert A. Falk, taken at a former trial on a suit between the same parties on an account. In this deposition Mr. Falk testified that he was the principal bookkeeper at Falk's mill during the years in which plaintiff worked at said mill; that there were some other bookkeepers who worked part of the time while he was sick. This deposition clearly shows that Falk's mill kept books; that they first kept a day book in which all the transactions of the mill were noted; that these transactions were later transferred to a journal and then from the journal to a ledger. He testified that plaintiff's son, together with Ike Norris, scaled the logs and stave bolts delivered by his father from his own land and from the Falk land and either by a slip of paper or by word of mouth told the bookkeeper the amount due for said logs so purchased and entries were made in the day book of these transactions. He testified that full credit was given for all logs or stave bolts purchased from plaintiffs and that while the books were very voluminous they would show the entire transaction. He stated that generally when logs were purchased from plaintiffs, the books would show "credit" for his logs or "credit" for his bolts.

It was admitted that Mr. Bennett, the attorney for plaintiffs, had talked to plaintiff, Bay, prior to the death of Mr. Falk relative to the account of Bay with the Falk mill and that Mr. Falk, at that time, claimed that Bay owed him $19,000.00 or $20,000.00.

It is also admitted that a suit was filed by the executor of the estate of F. X. Falk against plaintiff claiming an indebtedness of $23,000.00 on account; that plaintiff filed a counterclaim to that suit setting up the same claim for timber sold that he claims here. This suit was settled by stipulation and judgment rendered for $100.00, for plaintiff but this stipulation also provided that the counterclaim of plaintiff be dismissed and that the note in question was not involved therein and it provided that any defenses that plaintiffs might have against the note would not be barred.

Plaintiffs offered expert testimony to the effect that the books kept by the Falk's mill showed that plaintiff, Bay, was only given credit for $1,747.76, for lumber and bolts so sold.

The defense testimony showed that Mr. Roberts, attorney for defendants, had made a careful study of the books in question and that the books showed that plaintiff was indebted to F. X. Falk, deceased, in the sum of $23,000.00 after allowing a deduction for 93 months salary at $100.00 per month. Mr. Roberts testified that many items on the ledger showing credits could not be determined without going back to the day book, which would cause a discrepancy between the expert testimony offered by plaintiffs and that by the defendants.

The testimony on the part of the defendants is that they had all of the books showing the transactions between Falk's mill and plaintiffs and these books indicated the true account.

The court found from this testimony that the plaintiffs had not sustained burden of proof and for the defendants.

In this opinion we will refer to the appellants as plaintiffs and to respondents as defendants.

We follow the law as declared in Hastings v. Hudson (Mo. Sup.) 224 S. W. 2d 945, 950.

"It is the duty of this court to review de novo cases of this nature. We defer to the trial court's finding where the evidence does not convince us that such findings are incorrect. When the evidence does so convince us then we must make our own finding of facts."

Under point No. I in appellants' statement and brief, they state: "Evidence of parole agreement to effect that note and deed of trust was to be paid and credited by delivery of Bay's logs and bolts to Falk (Payee) Mill was competent."

Plaintiff's evidence offered to support the oral agreement relied on to show payment was given by his sons.

James L. Bay, Jr., testified: "A. Mr. Falk told my father that he would let him have the thousand dollars, and so my father told him that if he couldn't settle with him at that time that he would be willing to give him a note for the thousand dollars. And Mr. Falk said that that would be fine, that he could borrow money against this note if he needed it back into the business, and he also told him that he would—." And then the witness said: "A. Mr. Falk told Dad that he would deduct this thousand dollars from the timber coming off of dad's farm."

Robert Jerome Bay testified that he was present when his father, J. L. Bay, borrowed the $1,000.00 from F. X. Falk. He gave this answer: "A. And then Mr. Falk and and my father said that he could make a note for this thousand dollars and it would be taken out of the timber that came off of my father's farm." He stated that he never saw the note and mortgage.

These two witnesses testified that prior to the borrowing of this $1,000.00, represented by the note and deed of trust, plaintiff, J. L. Bay, had been working at the mill belonging to F. X. Falk and had been selling timber and that he wanted to purchase a building and went to Mr. Falk to get a settlement for his services and timber sold. They stated their father needed $1,000.00 and Mr. Falk did not have time to make a settlement and that there, in Mr. Falk's office at the mill, Mr. Falk agreed to let plaintiffs have $1,000.00 and plaintiff, Bay, agreed to execute the note and deed of trust to secure the same and that Mr. Falk then said he would deduct the $1,000.00 out of the proceeds from timber to be delivered to his mill from plaintiffs' land. This testimony was objected to because it was an attempt to vary the terms of a written contract by oral testimony and the court, in his judgment, stated that he believed the testimony was inadmissible but

the court then stated that the plaintiffs had not met the burden of proof by their evidence to show payment of the note.

Under Section 401.060 R. S. Mo. 1949, Mo. R. S. A. 1939, Sec. 3075, the law is stated: ''The maker of a negotiable instrument, by making it, engages that he will pay it according to its tenor, *   *   *''

In Mutual Life of Illinois v. McKinnis (Mo. App.) 47 S. W. 2d 564, 565, the law is stated:

''*   *   *   We are fully in accord with the rule that parole evidence is not admissible for the purpose of showing the contract evidenced by a note is different from the terms of the note when, for example, the attempt is made to show it was to be paid in a certain way, and we so ruled on the former appeal.   *   *   *''

It would clearly appear that in the case at bar this testimony definitely states that the note was to be paid from timber delivered from the land of plaintiffs. If so, the trial court was right in excluding it.

It is true that plaintiffs state in their brief the note was to be paid regardless of whether the timber was delivered and by so claiming, they state that the parole contract attempted to be proved in no way changed the written contract, but a reading of the testimony offered by plaintiffs to establish this parole contract clearly shows they attempted to prove that the note was given for the sole purpose of paying for timber to be delivered from plaintiffs' land and in no other way.

We will quote from plaintiffs' testimony given by Robert Jerome Bay:

''Q.   Go ahead.   A.   And my father and Mr. Falk explained about the note and what it was for.

''Q.   Go ahead.   A.   And then Mr. Falk and my father said that he could make a note for this thousand dollars and it would be taken out of the timber that came off of my father's farm.''

In plaintiffs' opening statement of the trial in this case their attorney, Mr. Dilworth, made this statement; ''Now we will further show by competent evidence that after this note and deed of trust was made with that understanding how it was to be paid—I might say further, though, to go back just a little, that this offer of making a note and deed of trust rather than taking money in settlement or to be debited to the account was an offer by Mr. Bay and of course signed by both the plaintiffs as husband and wife, so that Mr. Falk,—and this is the subject of the conversation between them again, which again will be proved by independent witnesses separate from the plaintiffs—so that if Mr. Falk needed any additional capital in his business he could take this note here and pledge it as collateral for it.''

From this statement and from the testimony offered, we think and hold that the oral evidence offered was an attempt to vary the terms of the written contract and for that reason was not admissible.

Plaintiffs, in their brief to support the admissibility of the oral contract relied on, cited 22 C. J., p. 1210, Sec. 1610.   This section states

the law that payment of an obligation in writing to pay money may be shown by extrinsic evidence in accordance with an agreement that the obligation may be satisfied in that manner.

There is no doubt that contemporaneous oral agreements may be shown in evidence when such agreements do not vary the terms of the contract itself but that is quite different from showing an oral agreement which is different from the terms of the written agreement expressed in the note.

In Roe v. Bank of Versailles, 167 Mo. 406, 67 S. W. 303, 308, the court states the law:

"Parol evidence was competent to show that at the time the note was given plaintiff directed any deposit he might thereafter make should be credited on the note, although before its maturity, did not in the least vary or contradict the note. The rule which prohibits the introduction of parol contemporaneous evidence does not apply where there is offered in evidence a distinct collateral contemporaneous agreement, independent of and not varying the written agreement, though it relates to the same subject matter."

This undoubtedly is the law. Had the agreement been that all sales of timber to the Falk's mill, after the making of this note, would be credited on the note, there can be no doubt that such agreement would have been valid and the parole testimony would have been admissible but that is not the testimony in this case. The testimony in this case is that the note was to be paid from this timber, thereby it changed the meaning and sense of the contract.

In New York Life Ins. Co. v. Smucker, 106 Mo. App. 304, 80 S. W. 278, the court stated that it was competent to prove a parole agreement that the first money earned by the maker as agent of the payee should be applied to the satisfaction of the note, that being an independent agreement not varying the terms of the note and then the court stated this law:

"No doubt it would have been incompetent to prove orally an agreement made prior to or at the time of the execution of the note which tended to vary the terms of the instrument in any respect."

Plaintiffs' second assignment of error that evidence of a parole agreement and understanding of the real purpose of the note and deed of trust which was that F. X. Falk was to use it only as collateral, was admissible. They cite Section 401.016 R. S. Mo. 1949, Mo. R. S. A. 1939, Sec. 3032. We quote only such part of the statute as applies:

"* * * and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

If plaintiffs had any testimony, admissible under this head, it could have been shown. But plaintiffs' witnesses specifically testified that, at the time the loan was made, Mr. Falk told plaintiffs that he

was going to use it for collateral security and that, in itself, is a complete answer to this complaint.

We can agree with plaintiffs' contention under assignment No. III, that, in order to show payment of the note in question, testimony as to the amount of timber sold and delivered to Falk's mill was admissible.

Plaintiffs' assignment No. IV, is to the effect that the testimony of the sons of plaintiffs as to the parole agreement was competent.

There can be no doubt that this testimony was competent so far as establishing a contract between plaintiffs and F. X. Falk, now deceased, was concerned. If the parole agreement, which they undertook to testify about, had been admissible, these were competent witnesses. The rule that where one party to a contract is dead the mouth of the other party is closed is one that is strictly construed and applies only to the parties to the contract. Certainly plaintiff, James L. Bay, himself, was incompetent to testify in this case.

We can agree with plaintiffs in their contention under assignment No. V, that the testimony of James L. Bay is not reversible error for the reason that the same facts were shown by other witnesses and for the further reason that the court found for defendants.

The trial court found the evidence on the part of plaintiffs was insufficient to grant the relief prayed for. The burden was on plaintiffs to show payment of the note in question. Johnson v. Johnson, 352 Mo. 787, 179 S. W. 2d 605; Meinholtz v. Lampert (Mo. App.) 101 S. W. 2d 503.

The testimony in this case was so uncertain that the trial court could not have decided for plaintiffs without guessing. It involved an accounting covering nearly a period of eight years of different kinds of services rendered by the plaintiff, J. L. Bay, to F. X. Falk in the sawmill business and for logs and stave bolts sold from plaintiffs' land to said mill. It involved a long list of credits for monies drawn from said mill during the entire time by the plaintiff, Bay, and it involved work done by the mill for Bay in planing lumber hauled from Bay's lumber yard and sold by him to his customers. The testimony was conflicting. Under plaintiffs' testimony the evidence would show that there possibly was over $9,000.00 due plaintiffs. Under the testimony of defendants, plaintiff, Bay, was indebted to defendant, F. X. Falk, in the sum of $23,000.00. A former lawsuit had been tried on an account between these parties where all of the testimony involved in this lawsuit was involved in a trial of an accounting between these parties and a judgment was rendered in that suit for the estate of F. X. Falk, deceased, in the sum of $100.00. The trial court was certainly justified in finding that under the testimony plaintiffs failed to carry the burden of showing payment of the note secured by the deed of trust which they sought by injunction to cancel. Judgment affirmed. *Vandeventer, P. J.,* and *Blair, J.,* concur.