**F. M. DEUCHLER AND COMPANY** (Plaintiff), Respondent,

v.

**Arthur J. HAMPTON** (Defendant), Appellant.

**No. 30299.**

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1960.

Edmund C. Albrecht, Jr., and J. J. Thyson, St. Louis, for appellant.

Wm. H. Dahman, Tenney, Dahman & Smith, St. Louis, for respondent.

RUDDY, Judge.

This is an action on a promissory note, payable on demand, in the principal amount of $1,896.66. A jury trial resulted in a finding and judgment for defendant. Thereafter, the trial court sustained plaintiff's motion to set aside the jury verdict and judgment and have judgment entered in accordance with its motion for a directed verdict. Pursuant to the action of the court in sustaining said motion, the verdict of the jury and the judgment thereon were set aside and judgment was entered in favor of plaintiff and against defendant in the sum of $1,896.66, plus interest thereon in the sum of $366.69. Plaintiff also filed an alternative motion for a new trial and the court in ruling thereon directed that in the event on appeal it may be determined that judgment notwithstanding the verdict should not have been entered, then plaintiff's motion for a new trial was sustained on certain grounds set forth in said motion for a new trial. Defendant has appealed from the ruling of the trial court.

The petition filed by plaintiff is in the conventional form. Defendant in his answer admits that he signed the note but denies that the signing of same was for a good and valuable consideration. In addition to failure of consideration, defendant alleges that the execution and delivery of said note was induced and procured through fraudulent misrepresentations.

It was further alleged in said answer that plaintiff took the note from the payee therein with knowledge of the facts and the purpose of its execution and that, therefore, plaintiff is not a holder in due course.

Whether or not plaintiff is a holder in due course has been extensively briefed by the parties. Defendant contends that plaintiff corporation had actual knowledge of the alleged infirmities in the execution and procurement of the note. We need not resolve this issue because we find the competent evidence in the case fails to reveal any infirmities that would absolve defendant from liability on the note.

All of the evidence offered by defendant was admitted by the trial court over the objection of plaintiff. Defendant's evidence showed that in 1953 F. M. Deuchler was the sole proprietor of a business wherein he operated as an insurance broker. In September 1953 defendant had a discussion with Deuchler concerning defendant's employment with Deuchler. Defendant testified that an oral agreement was then entered into whereby he was to attend a training school for insurance salesmen at Baltimore, Maryland, and that he would use his own savings account to support himself until his training was completed. He said his savings account amounted to $1,500. Defendant paid all expenses in connection with attending the training school. After the training course was completed, the agreement provided that defendant would place all his insurance business through Deuchler's office. Defendant attended the training school and completed the course of instruction. He then began selling insurance and placed his business through Deuchler's office. In December 1953 it was further orally agreed between defendant and Deuchler that if in any month defendant's commissions earned were below $300, Deuchler would advance to defendant each month the difference between the commissions defendant earned and the sum of $300. In this connection defendant said that the payment of the sum each month by Deuchler, of the difference between earnings and $300, was to be considered an advance or loan to defendant by Deuchler. It was further agreed that these advances would be paid back by defendant to Deuchler out of defendant's insurance commissions whenever they exceeded $300 per month, the agreed arrangement being, that one-half of the excess of commissions over $300 "would apply to what he (Deuchler)

had loaned me (defendant) prior." Defendant said it was agreed that it would take from three to five years for defendant to become self-sustaining and that Deuchler agreed to carry him on the aforesaid basis at least three years and up to five years. Defendant stated that this agreed arrangement was put into effect and continued approximately fourteen months.

In January or February of 1955 defendant and Deuchler had several discussions about the formation by Deuchler of a corporation to carry on the insurance business. About a week or ten days prior to March 1, 1955, Deuchler asked defendant to sign a note for $1,896.66, payable to Deuchler individually, to cover the account of the advances made. Defendant testified that he asked Deuchler why he should sign a note and that Deuchler answered: "Well, we are starting this corporation and I need this note as a memorandum of this previous account in order to transfer it into the corporation." Defendant in his testimony admitted that there was an open account at that time against him on Deuchler's books representing the advances that had been made to him by Deuchler.

In another place in his testimony defendant testified that Deuchler said the note "was necessary for the purpose of entry into visible item, for purpose of entry into the corporation." Defendant then asked Deuchler if demand could not be made on defendant immediately after he signed the note and that Deuchler said, "Well certainly I could, but this does not alter our agreement prior to this time and this is just purely a method of transferring an asset to the corporation."

In his cross-examination defendant said that he did not want to sign the note and that he told Deuchler he wanted to take the note home and show it to his father-in-law. This he did and the father-in-law told him there was nothing wrong in signing the note. Defendant then said he subsequently signed it. He further said that "he knew what a promissory note was" and knew that

"it could be collected at any time * * *"; adding that Deuchler told him he would not have to pay it "because it was a memorandum" of the debt "and not an instrument for anything other than to transfer an asset to the corporation, was its only function." At another place in his cross-examination defendant testified that the purpose of the note was for Deuchler "to turn it in as a visible asset" to the corporation about to be formed. Defendant admitted that no part of the $1,896.66 has been paid.

In March 1955 plaintiff corporation was formed and said corporation continued the business previously operated by Deuchler as an individual. The note signed by the defendant was transferred to the corporation and constituted part of the assets turned into the corporation by Deuchler for which he received stock in the new corporation. Defendant attempted to show through the testimony of an auditor for the corporation that the note was not turned over to the corporation at the time of incorporation. Our evaluation of the auditor's testimony shows the contrary. He said that while he did not verify the existence of the note in his audit of 1955 business, he was told at that time that there was a note securing the account due from defendant.

Deuchler in his testimony said that he told defendant he could obtain stock in the new corporation whenever defendant would make good and would establish himself in the insurance business.

Defendant further testified that following the signing of the note and the formation of the corporation he continued to write insurance contracts and placed them through the new corporation. He further said that after the corporation was formed further funds were advanced to him by the corporation, stating that $150 had been paid him on March 15th and $150 on March 30th. Following these two payments no other payments were made to the defendant by the corporation. Defendant stated that when no further checks were paid to him by the corporation, he did nothing about

it for several days and, thereafter, he asked Mr. Deuchler if something was wrong and Mr. Deuchler said "Yes, you are not going to get any checks."

Defendant said Deuchler told him that the advances were stopped because he (defendant) did not follow the rules. There were complaints by Deuchler about defendant's failure to collect premiums. As a result, Deuchler prepared an agreement which defendant signed, wherein defendant had to collect all premiums that became delinquent according to the agreement, within thirty days after the delinquency or the premiums would be charged back against the commissions credited to defendant's account. Defendant said that on the occasion when he asked Deuchler about not receiving a check there was no discussion about buying stock in the company. However, defendant remained with plaintiff corporation. On a later date, namely, in August or September, defendant asked Deuchler when he was going to be able to purchase some stock. He said he was told then by Deuchler that he would never own stock in the corporation. However, defendant admitted that Deuchler told him he would talk with him about buying stock in the corporation when he paid the substantial amount he owed the corporation. Within a short time thereafter defendant told Deuchler he was leaving the plaintiff company on October 1, 1955.

Deuchler in his testimony, in connection with defendant's right to purchase stock, said he told defendant that if he made good an interest in the corporation would be available. He said that later defendant walked in to his office and said, "Where's my stock." Deuchler then told defendant, "You certainly don't expect us to give you that stock" and further told defendant, "you are owing this corporation considerable money. Even if you wanted to buy it, how can you buy stock and owe the company as much money as you are owing." Deuchler then told defendant that if he cleared up the money he owed the corporation he would be entitled to become a member of the corporation.

Deuchler further testified that later defendant walked into his office and simply announced "I am quitting." Deuchler said he told the defendant to sit down and reminded him that he had spent a lot of money and time bringing him up to the point where he was in the insurance business and that both he and his son tried to talk defendant out of leaving the company, but that defendant continued to state that he was going to quit. On that occasion Deuchler made demand on defendant for payment of the note. Deuchler admitted that he had told defendant on one occasion "that as long as he was with the company" defendant would not have to worry about the note.

We have omitted much of the evidence of the plaintiff and have only related those portions of Deuchler's testimony we deem necessary to an understanding of defendant's testimony.

We have pointed out heretofore that all of defendant's evidence relating to a contemporaneous and prior oral agreement between defendant and Deuchler at the time of the signing of the note was admitted by the court over the strenuous and repeated objections of plaintiff.

The trial court when ruling on plaintiff's motion for judgment in accordance with its motion for a directed verdict and in the alternative for a new trial gave among its reasons for sustaining said motion that it erred in admitting evidence of an oral agreement between the parties which tended to vary the terms of the written promissory note.

Defendant in his first point insists that plaintiff is not a holder in due course because it had actual knowledge of any and all infirmities in the payee's title to the note and, therefore, all defenses available against the payee are now available against plaintiff-transferee. As we said before, we need not determine whether or not plaintiff is a holder in due course because that

issue becomes immaterial if defendant's alleged defenses have no validity.

■ It is the settled law of this state that parol agreements made prior to or contemporaneously with the execution of the note, which tend to contradict or vary the terms of the note, cannot be set up as a defense to a suit on the note. Farm & Home Savings & Loan Ass'n of Missouri v. Theiss, 342 Mo. 40, 111 S.W.2d 189; Bay v. Elmer, Mo.App., 237 S.W.2d 932; Farmers' Bank of Weatherby v. Redman, Mo.App., 24 S.W.2d 235; Main Street Bank v. Ennis, 222 Mo.App. 915, 7 S.W.2d 391; Farmers' State Bank v. Miller, 222 Mo.App. 633, 300 S.W. 834.

■ Defendant's testimony that he was not to pay the note and that it was merely a memorandum is in direct contradiction of the note he signed. In the note he unequivocally promised to pay to the payee or his transferee on demand the sum of money stated therein. The evidence offered by defendant and admitted by the court that the note was a mere memorandum and defendant was not to pay the note, undertakes to destroy the obligation of the note and to change its terms. There is no doubt that the evidence of the defendant to the effect that he was not to be held liable on the note he signed is in conflict with and an attempt to vary the terms of the promissory note he signed and it, therefore was inadmissible evidence because it violates the parol evidence rule.

■ While defendant does not directly contend that the note representing his open account was payable out of commissions he seems to indicate in his brief that such is the case. Defendant constantly refers to the oral agreement whereby he was to pay back the advances when his insurance commissions exceeded $300 per month. If by these constant references in his brief defendant intends to contend that he does not have to pay back these advances, whether represented by a note or an open account, until he earns commission in excess of $300 per month, again we must say, so far as the note is concerned, that this is an attempt to vary the terms of the note. Evidence that is offered for the purpose of showing that the note was to be paid only in a certain way or on a certain contingency is an attempt to vary the terms of the note and, therefore, is inadmissible.

In Bay v. Elmer, supra, testimony that a note was to be paid from timber delivered from plaintiff's land was held inadmissible. In Mutual Life of Illinois v. McKinnis, Mo.App., 15 S.W.2d 935, defendant offered evidence tending to show that the notes were to be paid out of commissions and were not to become obligations to be paid in any other manner. The court ruled that such evidence was inadmissible because it showed that the note was to be paid only in a certain way or on a certain contingency and, therefore, altered the terms of the note.

■ Defendant strenuously contends that no valid note came into existence and that the instrument sued on never acquired vitality as a note because of fraud in the inducement of the execution and delivery of the note. One of the weaknesses of this contention is that defendant relies, in part, on his testimony to the effect that demand for the payment of the note would not be made. This testimony, as we said, tended to vary the terms of the written promissory note and, therefore, was inadmissible. Defendant also argues that he was told the note was only a memorandum of an existing account delivered on the condition and with the assurance that it was not to be considered as a note. Frankly, this testimony challenges our readiness to believe defendant. However, giving full credence to the testimony of defendant, it merely means that he now wants to say that the instrument sued on is not a promissory note as it clearly purports to be, but is a memorandum of an open account. First of all, defendant is faced with the statute that every negotiable instrument is deemed prima facie to have been issued for a

**504**

valuable consideration, § 401.024 RSMo 1949, 21 V.A.M.S., and with § 401.025 RS Mo 1949, 21 V.A.M.S., which provides that an antecedent or pre-existing debt constitutes value, and is deemed such, whether the instrument is payable on demand or at a future time. Defendant admits that he was indebted to Deuchler at the time of the execution of the note. Defendant in his instruction No. 3 requires the jury to find that "defendant was indebted to F. M. Deuchler on an open account in the sum of $1896.66" at the time Deuchler was contemplating the formation of a corporation. Can defendant now be heard to say that he thought it was a mere memorandum of the account he owed and not what the instrument purported to be, that is, a promissory note? To reduce an open account indebtedness to a promissory note is not to create a fraud. In fact, his own evidence disclosed that defendant knew the legal purport of the instrument. He said he knew what a promissory note was and knew it could be collected according to its terms. He questioned Deuchler about the possibility of an immediate demand. Deuchler told him he could make such an immediate demand but promised to adhere to the original agreement. Giving credence to defendant's testimony that Deuchler told him the note would be paid out of future commissions, there is not one iota of testimony to show that Deuchler did not intend to keep this promise. It was defendant, by his action in terminating his employment with plaintiff corporation, who put it beyond the power of Deuchler to fulfill this promise. Defendant was not told that if he quit, his note or his open account would be considered cancelled.

Defendant in his testimony said that Deuchler wanted this note so he could turn it over to the corporation as a visible asset. Defendant now wants us to believe that the note now in the hands of the corporation is not an asset. Can defendant now be heard to say that he participated in a scheme to deceive the corporation and that we should help him benefit through his deception?

Deuchler employed no threats, duress or fear in obtaining defendant's signature on the note. In fact, he permitted defendant to seek the advice of his father-in-law. We find no competent evidence adduced by defendant from which a jury could find fraud by Deuchler in the inducement of the execution and delivery of the note.

In many places in defendant's brief he refers to Deuchler's breach of his oral agreement with defendant. The simple answer to these assertions is that we do not have a breach of contract suit before us. A violation of a contract is not ipso facto fraud.

Defendant has submitted a number of authorities wherein parol evidence was found admissible. We find none of these cases applicable to the instant case. In the following cases cited by defendant it was held that parol evidence was admissible to show conditional delivery of the instrument. Colt Co. v. Gregor, 328 Mo. 1216, 44 S.W.2d 2, and Earle v. Woodruff, Mo.App., 274 S.W. 107. In the case of St. Louis National Bank v. Flanagan, 129 Mo. 178, 31 S.W. 773, cited by defendant, parol evidence was admitted to show diversion of the note and that Flanagan was the accommodation maker. In another case, Eckery v. Byng, Mo.App., 45 S.W.2d 924, parol evidence was admitted to show that defendant was an accommodation maker for plaintiff bank and that no consideration passed to the defendant. In Bunch v. Phillips, Mo.App., 79 S.W.2d 785, parol evidence was admitted to show that defendant received no consideration and that delivery of the note was conditional. In the case of Ingle System Co. v. Coil, Mo.App., 211 S.W. 904, no value passed for the execution of the note.

■ We find no evidence in the instant case of a conditional delivery of the note or of defendant being the accommodation maker. As we pointed out the antecedent debt was a sufficient consideration. Bank of Moberly v. Meals, 316 Mo. 1158, 295 S.

W. 73; Sikes v. Riga, 221 Mo.App. 152, 297 S.W. 727.

■ As we said before, any evidence which tends to contradict or vary the terms of the note violates the parol evidence rule and, therefore, is inadmissible. Applying this rule to defendant's case, that part of his testimony which stated that the note was a mere memorandum of the existing account and would not have to be paid, tended to vary the terms of the note and, therefore, was inadmissible. It is not permissible for a maker of a note to admit its execution and to say that at the time of its execution it was agreed that it need not be paid. England v. Houser, 178 Mo.App. 70, loc. cit. 85, 163 S.W. 890, loc. cit. 894. Language used in the aforesaid case is very much apropos to the present case when the court said: " * * * He would only need to say that it did not contain the agreement; and, not containing the agreement, it is fraudulent; and, being fraudulent, it cannot be enforced. Thus a writing would be mere waste material and all stability of contract be at an end."

Defendant's evidence, stripped of this inadmissible testimony, leaves nothing on which to predicate a defense of fraud, in a legal sense, against the note.

Looking at the whole evidence in the case we fail to see how an exaction of a note by Deuchler could be the perpetration of a fraud when the note merely reduced to writing an existing indebtedness which defendant admits. It is true defendant contends that according to the oral agreement the indebtedness was not to be paid until defendant earned sufficient commissions according to the plan. Granting this, there is no evidence that demand was made for payment of either the note or the account in violation of the agreement until defendant quit, which action on his part obviously terminated whatever agreement existed.

So far as the alleged oral agreement is concerned defendant's own testimony shows that Deuchler substantially complied with it. There is nothing in defendant's

evidence to show that Deuchler when he procured the note from defendant intended to terminate the advances at any time in the future. It is true the advances were discontinued, but defendant's own evidence shows that he acquiesced in this change by signing an agreement concerning collections of premiums which amended their previous oral agreement and by remaining with the company under the new arrangement for five months.

Defendant did not terminate his business relations with Deuchler because of the cessation of the advances or of a demand for payment of the note. He quit because he could not acquire stock at that time in the new corporation. We do not find in defendant's evidence anything that resembles a representation by Deuchler made or implied at the time of the execution of the note that defendant could acquire stock at any time he desired. Nothing appears as to when and under what circumstances he could acquire stock. In this connection it must be remembered that Deuchler did not deny him the right to acquire stock. He merely postponed its acquisition until defendant's account was settled.

As we pointed out, no demand for payment of the note was made before defendant quit. There is no evidence that any representations made were false when made. As said in Powers v. Shore, Mo., 248 S.W.2d 1, loc. cit. 5, 6:

" 'Fraud is never presumed, but must be proved.' * * * The difficulty of proving fraud does not dispense with the necessity of making the proof. * * * 'And where the transaction under consideration may as well consist with honesty and fair dealing, as with a fraudulent purpose, it is to be referred to the better motive.'

* * * * * *

"Facts and circumstances which lead only to a suspicion of fraud or facts and circumstances as consistent with honesty and good faith as with fraud

are insufficient to make out a case for the jury."

■ It is our conclusion that the competent facts and circumstances related in evidence are an insufficient basis on which to predicate the submission of an issue of fraud to the jury.

The trial court did not err in directing a judgment for plaintiff. The judgment of the trial court is affirmed.

ANDERSON, Acting P. J., and SAM C. BLAIR, Special Judge, concur.