Leo **FARRIS** and Rosie Lee Farris, Appellants,

v.

Adele H. **HENDRICHS**, Adrian W. Harper, Trustee, Sidney Kleg, Marie Whelan, and Gertie Marbain, Respondents.

No. 52123.

Supreme Court of Missouri, Division No. 2.

April 10, 1967.

Morton L. Schwartz, St. Louis, for appellants.

Ronald M. Lending, St. Louis, for respondents, Harper, Kleg, and Whelan and Marbain.

PRITCHARD, Commissioner.

The appeal of this case, having been correctly transferred to this court by the St. Louis Court of Appeals on the ground that title to real estate is involved (see Farris v. Hendrichs, et al., Mo.App., 410 S.W.2d 97), is one by which appellants seek reversal of a judgment denying them relief in setting aside a foreclosure sale of their residential property under a second deed of trust. The principal theory of appellants is that the holder of the note under the second deed of trust (respondent Hendrichs) by long and continued acceptance of late payments from appellants waived prompt payment. As a result thereof, appellants say they were entitled to a reasonable notice from the noteholder that "there would be a modification of the practice and immediate, prompt and timely payment would be demanded, and that four or five hours notice of the change of policy on payment was not such a reasonable notice under the law."

Much of the record is involved in testimony relating to how much and when payments upon the note were received by Mrs. Hendrichs from appellants. The testimony as to receipts for payments is very vague and is most inconclusive as to either party to the instrument. We have before us the exhibits relating to payments, but find (as did counsel for both parties, and Mrs. Hendrichs) that it is impossible to relate receipts to notations appearing on Plaintiffs' Exhibits 3 and 4, which are "Schedule of Direct Reduction Loan," and which are identical with the exception of penned and penciled notations thereon. Mrs. Hendrichs testified that the notations were made by her, that appellants were often late in payments, and also made many part payments after the due dates, all of which she accepted. She testified further that the last payment she received was for January, 1963 (paid in June, 1963), after which there was a principal balance of $1,900.60. That amount appears on said Exhibits 3 and 4, being the 64th monthly payment after the initial one which was due (and paid) October 30, 1957, in which year appellants bought their residential property for $8,500. $1,400 was paid down (including closing costs), a $4,000 first mortgage was given the New Age Federal Savings and Loan Company, and Mrs. Hendrichs' second mortgage was $3,950.

Mrs. Hendrichs sold her second mortgage to Sidney Kleg on July 18, 1963 for $1,000. One of the receipts for payments is dated December, 1963, but she testified that was an error—she gave the receipt in May, 1963.

When a payment became complete (by partial payments to reach the monthly total, $47) it was marked on the schedules, which are a complete and accurate accounting for the months that were paid. At the time she sold the note, there were five delinquent monthly payments thereon—February, March, April, May and June, 1963. At various times she demanded payments past due, and threatened foreclosure.

Mrs. Farris testified that she made 83 payments on the second mortgage to Mrs. Hendrichs, paying thereon through 1964, doubling on some payments. She asked Mrs. Hendrichs what the balance was, and she said on more than one occasion, the last in May, 1963, that "my papers is so confused and messed up, she said I can't give you the balance just now, she said, but I will get my books straightened up, but continue to make your payments and everything would be all right." The advertising of the foreclosure started in July, 1963, to be held on August 16, 1963, and Mrs. Farris and her husband attended the foreclosure sale. They did not purchase the property thereat, because she thought she would get the property back. Mr. Kleg so told her—that if she "would pay him $250.00 down and the balance would be $500.00 and in five or six weeks, and, well, he said that he would sell me the second deed of trust back for $8,000.00." She paid him $250 but did not get the property back. Mr. Kleg bought the property at the foreclosure sale for $1,500. Mrs. Farris further testified that she had paid the first mortgage down to $2,390.51 and the second mortgage down to $1,150 in 1963, "paid through '64 and that would be $1,150.00 left."

A. W. Harper, the trustee in the second deed of trust, testified that it was he who contacted Mrs. Hendrichs for the purchase of the note on behalf of Sidney Kleg, and delivered the latter's check therefor to her on July 18, 1963. Prior to that, on behalf of Mrs. Hendrichs, Harper talked with Mrs. Farris about the delinquencies and she advised him that they could not pass the credit report for refinancing, but she would try to bring in the delinquent payments as fast as possible. He called Mrs. Farris on the day the note was sold and advised her that all the holder, Mr. Kleg, wanted were the delinquent payments, and "she said at the present time she couldn't come up with any payments." He told her that January 30th was her last payment, and she said she couldn't come up with it. He ascertained the balance to be $1,900.60, and so advised Mr. Kleg. A copy of the notice of foreclosure was mailed by him on the first day of publication to the Farrises, and five or six days later Harper called Mrs. Farris and told her that the new holder of the note advised him to start foreclosure, which he did as of July 19th, and she said she knew it was being foreclosed as of August 16th. The publications were made in the "Daily Record" for 21 days, notifying that the sale would be held on August 16, 1963. He cried the sale, at which the Farrises were present, and sold the property to Mr. Kleg for $1,500.

Sidney Kleg testified that when he bought the note, balance $1,900.60, from Mrs. Hendrichs, he authorized Harper to make a demand on that same day. Harper reported that the Farrises could not come in with any money, and he told Harper to proceed immediately with foreclosure. The sale was held August 16, 1963, in the Real Estate Board room, at which the Farrises and eight or nine real estate men were present. Thereafter, Mr. Kleg had a meeting with the Farrises at the office of their then lawyer, Mr. Harris, who requested him to make it possible for the Farrises to repurchase their home. Mr. Kleg then called Mrs. Farris and proposed that they could buy the property back for $8,000 total price, subject to financing, with a down payment of $750, including closing costs. He then talked to Mr. Farris, repeated the proposition, and Mr. Farris told him to "go to hell." About September 1, 1963, further conversations were had, and a contract was made for the Farrises to repurchase [signed by Frances and Whitfield Galliday (daughter and son-in-law of the Farrises)], with $250 earnest money. $50 was paid, and Mr. Kleg

wrote a letter asking for the $200 balance, which was later paid by the Farrises at $100 intervals, the last October 18, 1963. Galliday later refused to go ahead with the deal, and the Farrises did not go through with it.

Respondent Gertie Marbain was Mr. Kleg's straw party through whom he took title from the trustee in foreclosure, and the named respondent, Marie Whelan, was at times also used by Mr. Kleg as a straw party, but apparently is erroneously included as a party hereto.

Appellants' first and second points are to the effect that the trial court erred in not finding that Mrs. Hendrichs established a practice of waiver of prompt payment, acquiesced in delinquencies and lulled appellants into a sense of false security, whereby the trustee was not authorized to foreclose unless he or the mortgage holder gave reasonable notice that there would be a modification of the practice of waiver and acquiescence. Merit in these points is not borne out by the record. Although Mrs. Hendrichs accepted late piecemeal payments, she testified she did make demands and threatened foreclosure. We find, as the trial court must have found, that the payments on the note were in arrears five or six months at the time Mrs. Hendrichs sold it. The Farrises were fully apprised of that situation, and the record shows it to be true despite Mrs. Farris' testimony that she paid payments into 1964 "according to her records." (Much of the testimony relating to payments involves credibility of witnesses, which is for the trial court to determine, and to whom we defer. We discern from the record that the answers of Mrs. Farris are vague, evasive and most inconclusive to support her position that she had fully paid up payments prior to foreclosure.) Apparently it is appellants' position that $250 paid to Mr. Kleg should be credited on the note as payments thereon. Clearly, and Mrs. Farris conceded in her testimony, the $250 was earnest money paid Mr. Kleg for the repurchase of their home. It was not intended to be note payments, and under

this record cannot be used to supply delinquencies thereon.

The record shows here that appellants were given ample opportunity to bring up delinquent payments prior to foreclosure, August 16, 1963. They not only failed to do that, but when they were given the opportunity to repurchase the property (at a price apparently acceptable to them) they again failed.

■ Appellants cite Edwards v. Smith, Mo., 322 S.W.2d 770. That case involved an *agreement* made between the makers and the holder of the note (after its execution) that late payments might be made without foreclosure. Here, although Mrs. Hendrichs accepted late and partial payments, the evidence shows that she constantly made demands upon appellants to bring the note up to date or she would foreclose. The resolution of conflict in Mrs. Hendrichs' testimony, and that of Mrs. Farris to the effect that they should keep up their payments and everything would be all right, was for the trial court. Note that the trustee, Harper, contacted appellants on behalf of Mrs. Hendrichs, and that Mrs. Farris assured him that they would try to bring up delinquencies. Edwards v. Smith, supra, is of no aid to appellants here. They were aware of their delinquencies in payments, there was no waiver of prompt payment, and appellants were not lulled into a false sense of security against foreclosure. Points I and II are overruled.

The payments on the note were five or six months in arrears when Harper contacted appellants, once on behalf of Mrs. Hendrichs and when they were advised that the note had been sold to Mr. Kleg. They were advised that all Mr. Kleg wanted was that the delinquencies be paid up, and even after foreclosure notice was started they would have until August 16, 1963, the date of sale, to pay up and save their home from foreclosure. Under the circumstances, no further notice was necessary from the trustee or noteholder that payments other than as received by Mrs. Hen-

drichs would be insisted upon. There was no period of waiver which had to be terminated by notice within the contemplation of Edwards v. Smith, supra.

█ There is no evidence here that the trustee, Harper, failed to show impartiality as required (see West v. Axtell, 322 Mo. 401, 17 S.W.2d 328, 335) toward appellants and Mr. Kleg. In fact, he contacted appellants with respect to delinquencies long prior to foreclosure. Since the balance due on the note was established by the testimony of Mrs. Hendrichs, and her notations thereon when she sold it, the trustee was under no further duty to ascertain if it was in fact in default (especially to consider the inconclusive receipts of Mrs. Farris produced at trial, and when she herself acknowledged to him such default and that they would try to bring up delinquencies). There is no evidence that the trustee knew of any claim by appellants that Mrs. Hendrichs had waived prompt payments. Point III of appellants is overruled.

█ For their fourth point, appellants say that they repeatedly asked Mrs. Hendrichs what the balance was and offered to pay up any delinquent balance. Their testimony as to any such request and offer was for the trial court. Mrs. Hendrichs' testimony was that when a $47 payment was paid in full (through piecemeal, partial payments) she entered the whole payment as satisfied on the schedule of loan reduction. Thus, the balance due could be ascertained at any time (and was so ascertained when Mrs. Hendrichs sold the note). We deem that the record shows that appellants did not firmly offer to pay up any delinquent balance at any time. Lunsford v. Davis, 300 Mo. 508, 254 S.W. 878, merely affirmed a judgment setting aside a foreclosure upon condition that the plaintiff pay taxes which was the only default, and upon grounds not here appearing: the trustee had in mind only the interests of the mortgagees; the sale was had at an unusual hour with no other bidders than the mortgagee present; and the price was inadequate. In Leone v. Bear, 362 Mo. 464, 241 S.W.2d 1008, plaintiffs sought to stop the foreclosure sale by appearing and tendering an amount sufficient to stop the foreclosure sale, which tender was held to have been established by a preponderance of the evidence. As pointed out by respondents here: appellants are inconsistent in their claims that they offered to pay what was due, and that there was no default in that they had been late in paying installments in excess of the number due on the foreclosure. Point IV is overruled.

█ Appellants seem to base Point V on a theory that the evidence did not show they were not paid up in installments and foreclosure was unjustified: "The court erred in that it entered a decree for the defendants Hendrichs, Harper, Kleg and Marbain although the evidence clearly showed there was confusion on Mrs. Hendrichs' part in regard to the receipts and the receipts themselves were so confused as to preclude any basis for a foreclosure." The point (as well as others herein) does not comply with Civil Rule 83.05(e), V.A.M.R., requiring, "The points relied on shall briefly and concisely state what actions or rulings of the Court are claimed to be erroneous and briefly and concisely state *why* it is contended the Court was wrong * * *." (Italics added.) The burden of proof as to payment, so as to make the foreclosure without basis, was upon appellants. Bay v. Elmer, 241 Mo.App. 389, 237 S.W.2d 932, 937 [10], and cases cited. The record here shows that appellants were without legal basis to prevent the foreclosure, including their alleged payment of their installments due. Point V is overruled.

█ It is true that courts will scrutinize foreclosure proceedings held without court order, Stine v. Wilkson, 10 Mo. 75, 94. The evidence convinces us that appellants were not overreached by anyone in this foreclosure proceedings. On the contrary, they were given ample opportunity

to pay up delinquencies and prevent foreclosure, but failed to do so. Point VI is overruled.

■ The evidence does not bear out the contention of Point VII that the trustee did not ascertain the true balance due, if any, on the note. Harper ascertained that amount from Mrs. Hendrichs, noted in the back of the note, "Bal. Due 1900.60 plus interest as of Jan 30th, 1963." Mrs. Hendrichs likewise testified as to that amount and due date. No bad faith on the trustee's part is shown. Point VII is overruled.

We deem that there was no confusion as to payments on the note. Mrs. Hendrichs testified that when a payment was paid in full, she noted it on the schedule of loan reduction and signed it. The exhibits reflect that practice. Any confusion is in appellants' records—the receipts (which could not be related to endorsements of payments on said schedule). The burden, as stated, was upon appellants to produce preponderating evidence that they had paid beyond due dates. There was a sufficiency of evidence before the court for it to determine that issue. A hearing before a Special Commissioner would have added nothing. Appellants' Point VIII, alleging error in the trial court's refusal to appoint a commissioner at the end of the case, is overruled. There was no abuse of discretion in that matter.

■ There is no inadequacy as a matter of law of consideration of purchase bid at the foreclosure sale by Mr. Kleg. The balance on the note was $1,900.60, a second deed of trust. The first deed of trust had a balance due of $2,307. The bid was $1,500. The property had a value of possibly $8,000. Standing alone, inadequacy of bid is not a ground to set aside a foreclosure sale. See and compare Hrovat v. Bingham, Mo.App., 341 S.W.2d 365, 371 [9, 10], and footnote cases. The fact that Mr. Kleg did not credit the sale price on the note (he disclaimed any intention to

sue for a deficiency judgment) does not, as appellants claim, make the sale without consideration. Should the sale have brought *more* than the debt, the difference would have belonged to appellants. Northwestern National Ins. Co. v. Mildenberger, Mo.App., 359 S.W.2d 380, 384 [4, 5]. Point IX is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD C., is adopted as the opinion of the Court.

All of the Judges concur.