Francis A. CASSERLY, Administrator of the Estate of James Egan, Deceased, Plaintiff-Appellant,

v.

Larry BENCH and Elenor Bench, Defendants-Respondents.

No. 8870.

Springfield Court of Appeals, Missouri.

Oct. 6, 1970.

Claude T. Wood, Richland, for plaintiff-appellant.

J. W. Grossenheider, Lebanon, for defendants-respondents.

HOGAN, Judge.

This is an action on a promissory note in the sum of $5,000 brought by the administrator of the payee's estate. Trial to a jury has resulted in a verdict for the defendants, and the plaintiff has appealed. One or another aspect of this litigation has been in the courts for some time, see Robinson v. Bench, Mo., 409 S.W.2d 145, and Bench v. Egan's Estate, Mo., 363 S.W.2d 547, and a good deal of the factual background of this case has been reported before. Nevertheless, it is necessary to state the facts rather fully in connection with this appeal.

Mr. Egan, the decedent, operated a garage and salvage yard in Pulaski County. Mr. Bench was one of his employees. On April 12, 1960, Mr. Bench purchased what was described as "all [the] stock and equipment located in Egans Garage," and on the same day he made and delivered a note in the sum of $1,250 payable to Mr. Egan and his wife, to mature in one year. Mr. Egan and his wife executed a bill of sale to Mr. Bench. The bill of sale recited that Mr. and Mrs. Egan, for a consideration of one dollar, sold all the stock and equipment located in the Egan Garage. Attached to the bill of sale is a list of items obviously suitable for use in the operation of a service garage. The total value of these items, as listed, is about $7,000.

On May 6, 1960, as part of the same transaction, Mr. and Mrs. Egan executed a writing by the terms of which they leased the "Egan Garage and Salvage

Yard" to Mr. Bench for a term of five years, commencing on the first day of April 1960, at a monthly rental of $300. Among other things, the lease recited that "* * * the lessee has purchased from the lessor[s] certain garage fixtures, stock and equipment *and has executed his promissory note and chattel mortgage for the payment of said purchase,* and it is further agreed by the lessee [that] he will not enter into any other business except that of a garage and salvage yard while any note secured by [a] chattel mortgage is due and owing to the lessor[s]." (Our emphasis.) The lease further recited that taking of the demised premises by eminent domain was believed to be imminent and "* * * the lessee does hereby agree that by reason of this lease he will not have any voice in the negotiations by the [condemnor] for the purchase or condemnation of this property and does hereby waive any rights that he may have by reason of this lease agreement, in connection with the purchase or condemnation of the [demised premises] by the [condemnor]. In the event [the condemnor] * * * purchases or condemns the purchased [sic] property * * then in such event the lease on this property * * * shall be null and void but * * * the lessor[s] [do] hereby agree to build another building of the same type and structure and equal to or better than the present building on the leased premises at a location to be agreed upon * * * and that the lessor[s] after the construction of this new building shall enter into and lease to the Lessee said building and property for the same rental that is called for by the terms of this lease * * * and that said building shall be * * * ready for occupancy not less than 45 days from date on which vacation of present building is required. * * *" On the date of the lease, May 6, 1960, defendants made and delivered their promissory note in the sum of $5,000 to James Egan. The note matured in five years. This is the note in suit. At the same time, Mr. and Mrs. Bench executed a chattel mortgage covering the equipment conveyed to them by the bill of sale dated April 12. The note in suit recites an interest payment of $150 on September 30, 1960, but it has not been endorsed or assigned.

Mr. and Mrs. Egan died October 25, 1960. On April 4, 1961, Mr. Bench filed claims against each of the Egan estates alleging a breach of the lease. These claims were consolidated after transfer to the circuit court, and were dismissed on motion of the administrators after an unavailing attempt by Mr. Bench to amend his claim. The dismissal was affirmed by the Supreme Court on appeal. Bench v. Egan's Estate, supra, 363 S.W.2d 547. Thereafter, Mr. Bench sued the administrators and the Egan heirs for the same breach of the lease; that case was dismissed, without appeal. Robinson v. Bench, supra, 409 S.W.2d at 147. On June 25, 1964, the administrator of the estate of James Egan filed suit on the $5,000 note. Defendants filed an answer, setting up the execution of the lease and averring that the "consideration for said [$5,000] note was the performance of all of the obligations contained in said lease." Defendants alleged the taking of the leased premises by eminent domain, the obligation to construct a new building, and the lessors' failure to perform. The answer concluded that "all consideration for the note sued for has failed and that there was no consideration given for said note." The administrator filed interrogatories and received answers thereto, in which the defendants admitted execution of the note "as set forth in defendants' answer." On motion of the administrator, those parts of defendants' answer setting up the breach of the lease as a defense to the note were stricken on the ground that the issues thereby tendered had been adjudicated. The administrator moved for summary judgment, which was granted. On appeal, the Supreme Court affirmed in part and reversed in part, holding that the breach of the lease could not be asserted as a counterclaim because the applicable period

of limitation had run, but that, nevertheless, it might be set up by way of defense to the note. The case was remanded for trial on defendants' liability on the note. Robinson v. Bench, supra, 409 S.W.2d at 148-149 [2-4].

No amended pleadings were filed, and after a change of judge as provided by Rule 51.03(b), V.A.M.R., the case finally proceeded to trial on June 19, 1968. It was shown that the original administrator of the estate of James Egan had been elected Probate Judge, and that Mr. Casserly had been appointed administrator de bonis non and had been substituted as plaintiff. The note was received in evidence, and the answers to the interrogatories previously filed were read in evidence. They indicate that defendants signed the note, that no payment had been made on the principal, and that the sum of $150 had been paid as interest. After proving the amount of a reasonable attorney's fee for collection (for which the note provided), the plaintiff rested.

The defendants introduced the lease in evidence, together with the note for $1,-250 which they executed on April 12, 1960. Over objection, these exhibits were received in evidence. Defendants' counsel read parts of the lease to the jury, and the jury inspected both exhibits. Defendant Larry Bench was sworn. He identified himself and stated that in April and May 1960 he was employed by Mr. Egan. Mr. Bench was shown the bill of sale and the $1,250 note and was asked " * * * what the discussion was leading up to the signing of these instruments * * * and subsequently the signing of Defendants' Exhibit 'A' the lease together with the note sued on and the chattel mortgage * * *." Counsel for the plaintiff objected on the ground that all preliminary negotiations were presumed to be merged into the integrated writing, and the objection was sustained. Mr. Bench was then asked "whether or not you and Jim Egan had a conversation concerning the opera-

tion of his garage under a lease that was to be executed." The same objection was made by counsel for plaintiff and was again sustained. After a conference with the court out of the hearing of the jury, defendants made an offer of proof, which we quote verbatim:

"MR. GROSSENHEIDER: We wish to make an offer of proof here. If the witness were permitted to answer the questions that we have asked him and similar questions along this same line, which he is not permitted to answer because of the objection of the plaintiff and sustained by the Court, the testimony would be that at the time of the execution of defendants' Exhibit 'B' and Plaintiff's Exhibit '3', there was a conversation with Mr. Egan to the effect that he wished to retired [sic], that he wanted Mr. Bench to take over the operation of his garage and salvage yard and body shop. That Mr. Bench didn't need to have any money to do this. That even though he was just working for Egan for wages, that he would make the arrangements whereby he could it [sic]. That Egan was interested in an income from now on and that he thought he could get the income from the garage with Bench doing the work in the body shop and the salvage yard and that he would sell him all of the items on the list. He would lease to him the real estate and the building and that he would have Bench pay him a thousand dollars cash and give him notes to cover the rest with the understanding that the five thousand dollar note, which is being sued upon here in Court today, *would never have to be paid for so long as he paid him the interest* and so long as he stayed with the business and operated the business that Egan was selling to him and didn't go out and work somewhere else.

The testimony would be that—that Egan had indicated further to Mr. Bench that he would receive a sum

probably in the excess of eighty-two thousand dollars shortly from the State for the condemnation that was being had on this property and that he wanted to quit work and that that was the purpose of the arrangements that was entered into with the note over which this suit is brought. *It was never intended to have been paid and that was the meaning of the language in the lease* which is in evidence and which part is stated, it is further agreed that the Lessee—and I'm quoting from the lease—it is further agreed by the Lessee that he will not enter into any other business except that of a garage and salvage yard while any note secured by chattel mortgage is due and owing to the Lessor; that's the offer of proof." (Our emphasis.)

The offer was refused. Mr. Bench was then shown the $1,250 note which he again identified, and he stated that on the day of its execution, April 12, 1960, he received the bill of sale from Mr. Egan. On that same day, Mr. Bench said, he also paid Mr. Egan $1,000 in cash, in counsel's words, "picking up notes and so forth." Mr. Bench was again shown a copy of the lease and the $5,000 note and was asked if he executed the note and the chattel mortgage, and he answered, "Yes, sir."

Mr. Bench went on to state that he began operation of the garage in April and that "May was just a later instrument." He continued to operate the garage until the Egans' death. Thereafter, he received a notice to vacate the leased premises, "I think * * * sometime in November." The notice was "that [the condemnor] would take possession of the building and it had to be vacated." Mr. Bench notified the administrator "that things were in a position where I couldn't do anything," and asked counsel "to intercede in my behalf." Finally, on February 1, 1961, Mr. Bench was obliged to vacate the leased premises. Between November or December 1960, and February 1, 1961, Mr. Bench attempted to find another place large enough to accommodate his operation, but he was unable to

do so. Eventually, Mr. Bench "formed a partnership with another business that was related * * * and we could work together and I could work and change my operation enough to stay within the scope of the agreement. I'd lose the salvage yard but I could still stay in the garage business."

Mr. Bench went to the administrator, he said, and found that the $1,250 note had been put up as security "at the bank." He paid the note and asked the administrator about the $5,000 note "which to my knowledge was being carried on Mr. Egan's person at all times." The administrator said that he didn't have the $5,000 note and Mr. Bench had heard nothing further about it until suit was filed.

Mr. Bench testified further that at the time of Mr. Egan's death, Mr. Egan was constructing a building to replace the leased building, but after Mr. Egan's death no further work was done. Mr. Bench was unable to find "a place for a salvage yard," and "finally ended up with a strictly body shop operation with a limited mechanical shop." He explained further that the purpose of a salvage yard was "to be able to sell used parts in conjunction with your automotive repair," and "the fact that your [sic] not selling used assemblage and things of that nature * * * your [sic] limited strictly to mechanical repair and more or less replacing with new parts which limits your income considerably [and] changes your operation." Mr. Bench was again asked if he "had had a discussion" with Mr. Egan "as to his intention regarding the five thousand dollar note." This question was objected to as an attempt to vary the terms of the instrument and the objection was sustained.

In rebuttal, plaintiff had evidence from a Mr. Milford Egan—not related to Mr. James Egan—to the effect that a building had been constructed for Mr. Bench similar in size to the building originally leased to him, but Mr. Bench had " * * * said that he'd found a better deal and * * *

was going to locate in Waynesville." Mr. Bench denied this, substantially, saying that a building had been discussed but that he had never been offered facilities in which he could conduct his salvage business.

In this court, the plaintiff has carefully briefed and argued a number of assignments of error, but for our purposes it is unnecessary to consider and discuss them all. In our view, the meritorious question on appeal is whether or not the court erred in giving Instruction No. 4 which submitted defendants' pleaded defense of failure of consideration.

Instruction No. 4 advised the jury that if it found that the note sued on was given "in reliance upon the performance of the lease agreement," that the obligations contained therein were not performed, and that the consideration for the note failed, then it would find the issues for the defendants. The plaintiff argues, among other things, that the giving of Instruction No. 4 was error because the evidence at best established only a partial failure of consideration, and therefore the instruction was wholly without evidentiary support. We consider this point well taken.

■■ Instruction No. 4 does not come from the M.A.I., although it represents, in form, an attempt to submit the ultimate issues in simple and direct fashion, as Rule 70.01(e), V.A.M.R., requires. However, it must be borne in mind that under the M.A.I., as formerly every affirmative defense submitted must be supported by the evidence. Brassfield v. Sears, Mo., 421 S.W.2d 321, 323 [1]; Madison v. Dodson, Mo.App., 412 S.W.2d 552, 557 [8] [9]. Failure of consideration, total or partial, is an affirmative defense which must be pleaded and proved by the party asserting it. Rule 55.10, V.A.M.R.; Thompson v. McCune, 333 Mo. 758, 764, 63 S.W.2d 41, 43 [2]; Cable v. Wilkins, Mo.App., 352 S.W.2d 50, 52 [2]. Moreover, in this connection, it must be remembered that an instruction on a total failure of consideration could not be justified by a showing that the lease was part of the consideration given for the execution of the note. Currey v. Harden, 109 Mo.App. 678, 681, 83 S.W. 770 [1]; Overstreet v. Beasley, 60 Mo.App. 315, 320.

■ In this case, the defendants' incompetency under the so-called Dead Man's Statute, § 491.010, R.S.Mo. (1969), had been waived by the plaintiff's propounding interrogatories and receiving answers thereto in the circuit court. Watkins v. Watkins, Mo., 397 S.W.2d 603, 611 [9, 10]. Failure of consideration, like a total want of consideration, may be shown by parol. Patt v. Leavel, 161 Mo.App. 242, 247, 143 S.W. 833, 835 [2]; Gaar, Scott & Co. v. Hill, 113 Mo.App. 10, 13, 87 S.W. 609, 610. Defendant Larry Bench did testify, and we have recited his testimony at length simply to show that there was no direct evidence that the note was given in payment for the execution of the lease, or in reliance upon the covenants therein contained. The lease states that the note sued on was given in payment for "certain garage fixtures, stock and equipment," and while defendants offered some evidence which tended to impeach this recital, that evidence—the note for $1,250, the bill of sale, and Mr. Bench's statement that he paid Mr. Egan an additional $1,000 in April 1960—lends no support to their theory that the $5,000 note was given as consideration for the execution of the lease, or the performance of the lessors' covenants. True, defendants made an offer of proof, but their offer had nothing to do with failure of consideration; what they offered to prove was that the note was merely given as security, or on a certain contingency, which of course cannot be shown by parol, F. M. Deuchler and Company v. Hampton, Mo.App., 339 S.W.2d 499, 503 [1] [2] [3]; Bay v. Elmer, Mo.App., 237 S.W.2d 932, 936–937 [2] [3], and if defendant Larry Bench had testified to all that counsel offered to prove, there still would have been no direct and express

showing that the note was given as payment for the execution of the lease.

We do not lose sight of the fact that there are instances where, on conflicting evidence, the nature of the consideration given for a note may be a question of fact to be resolved by inference from circumstances. See, e. g., Shawhan v. Shawhan Distillery Co., 195 Mo.App. 445, 449–450, 197 S.W. 369, 370 [2] [3], certiorari quashed State ex rel. Shawhan v. Ellison, 273 Mo. 218, 200 S.W. 1042; German-American Bank v. Camery, 189 Mo.App. 542, 544–545, 176 S.W. 1076, 1077 [1, 2]; 11 C.J.S. Bills and Notes, § 700, pp. 211, 214. However, the plain inference from the evidence in this case is that all the documents in evidence were executed as part of a single transaction, and that in fact both notes were given to Mr. Egan (and his wife) as payment for the Egan Garage. Mr. Bench testified that he began operating the garage in April; the $1,250 note and the bill of sale were dated April 12, 1960, and the term of the lease commenced on April 1, 1960, though it was executed in May. One might logically and properly infer that both the notes in evidence and the $1,000 in cash were given in payment for Mr. Egan's business, and that construction of a new building, should the old one be taken by condemnation, was part of the deal, but in our view the evidence does not permit the inference that defendants received nothing of value for the $5,000 note because a new building was not constructed. Otherwise put, there is no evidentiary basis for a hypothesis that the consideration for the note wholly failed because a new garage building was not constructed, and Instruction No. 4 should not have been given. The giving of an instruction which is not supported by the evidence is prejudicial error, in that the instruction is necessarily misleading and confusing. Switzer v. Switzer, Mo., 373 S.W. 2d 930, 940 [19]; Hart v. Midkiff, Mo., 321 S.W.2d 500, 508 [10]. For the error noted, the judgment is reversed and the cause is remanded for a new trial.

TITUS, P. J., and STONE, J., concur.